(Decided 3rd March, 1882.)

---

## PETER WEIKEL vs. AMON CATE.

*Construction of the Act of 1874, ch. 320, relating to Execution on judgments—Relief in Equity against a Judgment of Condemnation rendered by a Justice of the Peace upon an Attachment on a Magistrate's judgment recovered more than three years before the date of the Attachment—Mistake—Injunction—Interpleader.*

The Act of 1874, ch. 320, provides that " *on all judgments rendered in any Court of law*, an execution or attachment may issue at any time within *twelve years* from the date of such judgment." HELD :

1st. That a judgment before a justice of the peace is not a judgment within the meaning of said Act.

2nd. That where a judgment of condemnation was rendered by a justice of the peace in a case of attachment upon a judgment rendered more than three years before the issuing of the attachment, and said judgment of condemnation was entered by mistake without any fault on his part, the attachment debtor was entitled to an injunction restraining the execution of the judgment of condemnation which had been entered by mistake against him.

The prayer of the bill was, that the complainant might be permitted to bring into Court the amount due by him upon a judgment against him in favor of S. amounting to $150 and interest, (it being the judgment debt attached in his hands) to abide the result of this suit; and that S. might be enjoined from executing his judgment against the complainant; and that W., the attaching creditor, might be restrained from executing his judgment *for more than the sum of* $119.40. The injunction restrained W. from exe-

cuting his judgment against the complainant *for any amount whatever.* HELD:

That the bill was not for an injunction merely, but was in the nature of a bill of interpleader. That all the parties were before the Court and inasmuch as the justice of the peace had no power to issue the attachment, and the judgment of condemnation having been entered by mistake, and contrary to the agreement of the parties, the Court properly enjoined W. from issuing an execution *for any amount* on said judgment.

APPEAL from the Circuit Court of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., STONE, GRASON, MILLER, ROBINSON and IRVING, J.

*Robert D. Morrison,* for the appellant.

By the Act of 1874, ch. 320: "On all judgments rendered in any Court of law, an execution or attachment may issue at any time within twelve years from the date of such judgment."

The place where a justice of the peace sits to administer justice judicially, is a Court of law in the contemplation of the statute. For Lord COKE so defines it, *Coke upon Littleton,* 58, and the Constitution declares that the judicial power of this State shall be vested, with others, in justices of the peace. *Art.* IV, *sec.* 1.

COKE's idea of a Court of law is that of all the authorities, BLACKSTONE adopting it, and adding that there must be at least three constituent parts—the *actor, reus* and *judex.* 2 *Blackstone's Com.,* 25.

Justices of the peace are not Courts of record for obvious reasons, but the Code provides for the recording of judgments rendered by them; and, besides, to be Courts of law, they need not be Courts of record, as in the case of the Courts-baron, the Hundred and County Courts, and

the old Magistrates' Courts in Maryland, which were called Courts because they possessed almost identically the same powers as are now vested in justices of the peace.

*Burns,* in his work on *Justices of the Peace,* 3rd vol., p. 132, says, that where the word Court appears in a statute, it does not comprehend justices out of session; from which the only reasonable inference is that it does comprehend justices in session. Is not a justice of the peace sitting in the exercise of judicial power vested in him by the Constitution, a justice in session?

The index of the Courts treated of by *Coke* in the fourth part of his *Institutes,* has the following heading: "A table of the several Courts in this fourth part of the Institutes treated of." The table includes justices of the peace.

In other States, a justice of the peace may not be a Court of law; but the fact, if so, may be explained by the different character of the powers which are vested in him.

There was no necessity, therefore, for reviving Weikel's judgment. It was good for twelve years, and had only run seven.

At the common law, a judgment was good for a year and a day; after the lapse of which time it could be recovered only in an action of debt. The writ of *sci. fa.* to revive was first authorized by the *Statute of Westminster,* 2 *Edward I, ch.* 45. This statute did not apply to judgments obtained before justices, because, in the language of *Blackstone,* "the present constitution of justices was not invented." But the Act of 1801, ch. 62, sec. 4, placed them and the Superior Courts, as to the duration of judgments and the remedy by *sci. fa.,* on the same level.

Thus the law stood until the Act of 1823, ch. 194, which preserved this equality by declaring that "on all judgments to be rendered in any county Court, or by any jus-

tice of the peace of this State, or in the Court of Appeals, a *fieri facias* or *capias ad satisfaciendum* may issue at any time within three years from the date of such judgments."

The next legislation on this subject, still preserving the equality, was the Act of 1862, ch. 262: "On all judgments an execution may issue at any time within three years after the date of such judgments, &c., but execution by way of attachment, may issue at any time within twelve years from the date of said judgment; and if more than three years have elapsed after the date of the judgment, &c., the said attachment shall be subject to the same defences by the defendant, as in cases of *scire facias.*"

In view, then, of this equality maintained all along by the Superior Courts and Justices as to judgments, and also of the fact that there is no good reason why it should not be continued, the reasonable construction of a later statute extending the duration of judgments is that which continues the equality, unless, always, language denoting a contrary intent be employed. The language of the Act of 1874, is: "On all judgments rendered in any Court of law." This means all judgments, as in the Act of 1862, the words "rendered in any Court of law," being surplusage; for only Courts of law can render judgments of the kind contemplated.

The complainant, in his bill, only asked that Weikel be restrained from executing his judgment for more than $119.40. But the Court in its decree perpetually enjoined him from issuing any process of execution, whether by way of attachment or otherwise. In doing so, it erred, even though it be admitted that as between Weikel and Cate, there had been such a mistake as to authorize the latter's application. For, as to the $119.40, Cate's position is in the nature of that of an interpleader. Schaum becomes the real complainant, and as between him and

Weikel *vs.* Cate.

Weikel, there can be no question as to whose are the superior rights. The debt is not denied. Weikel testifies that it was for clothes, and his statement is not contradicted. Schaum, therefore, comes within the principle that a Court of equity will not disturb nor restrain proceedings upon a judgment at law, unless such judgment be unjust and inequitable in itself. Schaum's defence being limitations, which, if held to be good in this case, is not a meritorious one; the claim a just one; nearly enough money in Court to pay it; and all the parties being before the Court, so that it can do justice to all concerned, it is respectfully urged that Weikel is entitled to $119.40 at least, and that the Court erred in enjoining him from collecting it.

*J. Upshur Dennis,* for the appellee.

Without a statutory provision conferring the power, no execution can issue upon a judgment over twelve years old, without a revival by *scire facias,* the presumption being that the judgment has been satisfied. *Johnson vs. Lemmon,* 37 *Md.,* 343; See also *Anderson vs. Graff,* 41 *Md.,* 605.

An attachment on judgment stands on the same footing as an execution by *fi. fa. Boyd vs. Talbot,* 7 *Md.,* 407.

A justice may issue an attachment by way of execution, in any case where he is authorized to issue a *fi. fa.,* and only in such cases. *Revised Code, Art.* 68, *sec.* 30.

A justice cannot issue a *fi. fa.* on a judgment more than three years old, without its revival by *sci. fa.,* and the Code specially directs how such judgment may be revived. *Revised Code, Art.* 68, *sec.* 34.

The only statutory provision by which execution can now be issued on *any* judgment after the lapse of three years, is ch. 320, of Act of 1874; and that provision is carefully limited to those judgments which are rendered in a "Court of law." *Revised Code, Art.* 64, *sec.* 135.

The Act of 1862, ch. 262, allowed it to be done in the case of magistrates' judgments as well; but that provision was repealed by the Act of 1874, ch. 320, and the right was limited, as above stated.

ROBINSON, J., delivered the opinion of the Court.

The Act of 1874, ch. 320, repeals sec. 16, of Art. 29, Code of Public General Laws, as amended by the Act of 1867, ch. 267, and provides, that *on all judgments rendered in any Court of law*, an execution or attachment may issue at any time within *twelve years*, from the date of the judgment.

In this case, an attachment was issued by a justice of the peace, on a judgment rendered by a justice of the peace, of *more than three years standing*, and the main question is, whether such a judgment is within the meaning of the Act of 1874?

At common law, justices of the peace were merely *conservators* or *keepers* of the peace, and although the Legislature in this State has conferred on them a limited jurisdiction in civil and criminal cases, *the office itself* has never been considered a *Court of law*.

This, we think, is apparent from sec. 1, Art. 4, of the Constitution, by which it plainly appears, that a Court of law within the meaning of the Constitution, is a Court of record. A judgment rendered before a justice of the peace, is not therefore a judgment within the meaning of the Act of 1874.

This being so, the question is, whether the appellee Cate, is entitled to an injunction to restrain the execution of the judgment of condemnation entered on the attachment? And this depends upon whether the judgment of condemnation was obtained by fraud, mistake or surprise, and without any fault on his part.

The proof shows that in 1871, Weikel, the appellant, recovered a judgment before a justice of the peace against

Schaum. In 1878, Schaum recovered a judgment against Cate, in the Court of Common Pleas of Baltimore City, from which Cate appealed to this Court. On the day the judgment was entered, Weikel caused an attachment to be issued on the judgment, which he had recovered in 1871, before the justice of the peace, and the attachment was laid in the hands of Cate, garnishee of Schaum. On this attachment, a judgment of condemnation was subsequently entered against Cate. After a careful consideration of the testimony of the several witnesses, we fully agree with the Court below, that the judgment of condemnation was entered by mistake, and this too, without any fault on the part of Cate or Schaum. Although the evidence is conflicting, it plainly appears, we think, that the understanding between the parties was that no judgment was to be entered on the attachment, until the final disposition of Cate's appeal against Schaum. Until then, Cate, in point of fact, had no funds in his hands liable to garnishment. Such being the case, he was clearly entitled to an injunction, restraining the execution of the judgment of condemnation, which had been entered by mistake against him.

But it is argued, that the decree is also erroneous, because it enjoins the appellant from issuing an execution for any amount whatever, whereas the bill only asks that he be restrained from executing the judgment for more than $119.40. Were this a bill for an injunction merely, there might be some force in this contention. But the complainant alleges that he owes in fact only $150 on the Schaum judgment, and that he is threatened on the one hand by Schaum, with execution for the whole amount of this judgment, and on the other hand, he is threatened by Weikel with execution on the judgment of condemnation against him as garnishee of Schaum. He then prays that he may be permitted to bring into Court the sum of $150 with interest, to abide the result of the suit. The bill is therefore in the nature of a bill of interpleader. All

the parties in interest were before the Court, and inasmuch as the justice of the peace had no power to issue the attachment, and the judgment of condemnation having been entered by mistake, and contrary to the agreement of the parties, the Court properly enjoined the appellant from issuing an execution for any amount on said judgment.

For these reasons, the decree below will be affirmed.

*Decree affirmed.*