## PUBLIC SERVICE COMMISSION OF MARYLAND v. HAHN TRANSPORTATION, INC., ET AL.

[No. 188, September Term, 1968.]

*Decided May 27, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, SINGLEY and SMITH, JJ.

*Charles R. Richey, General Counsel,* for appellant.

*Paul R. Kach,* for appellees.

Amici Curiae Brief filed by the Maryland State Bar Association, Inc. and The Bar Association of Baltimore City, *James A. Perry* on the brief.

HAMMOND, C. J., delivered the opinion of the Court. BARNES, J., dissents. Dissenting opinion by BARNES, J. at p. 585 *infra.*

In 1966, during the course of a proceeding before the Public Service Commission involving carriers in bulk of flammables, the attorney for one of the carriers objected to petitions and

motions filed by a lay employee of another carrier, Hahn Transportation, Inc., arguing that the preparation and filing of these pleadings amounted to the practice of law by one not a member of the bar. This led the Commission to seek a determination of whether it should adopt a rule forbidding laymen to practice or appear before it in a representative capacity in connection with or at a formal hearing. Acting under Code (1965 Repl. Vol.), Art. 78, § 62 ("The Commission shall institute and conduct any proceedings reasonably necessary and proper to the exercise of any of its powers, or the performance of any of its duties"), it held hearings and considered testimony, oral presentations and briefs pro and con filed by various bar associations and various utilities regulated by the Commission, and on November 5, 1967, adopted Rule III-A reading as follows:

> "All parties, except individuals appearing in their own behalf, shall be represented by attorneys-at-law, who are duly admitted and enrolled to practice before the Court of Appeals of this State where the Commission is performing a quasi-judicial function as distinguished from a legislative, executive, or a ministerial function. No non-resident attorney shall be allowed to enter his appearance in a case before the Commission except upon motion, which will not ordinarily be granted unless some attorney with a full time office in this state is associated with him or her in the matter."

Hahn Transportation, Inc. and Germanko and Halter, co-partners trading as Baltimore Tank Lines, sought review and invalidation of the order adopting the Rule by the Circuit Court of Baltimore City under Code (1965 Repl. Vol.), Art. 78, §§ 90 and 91, claiming to be aggrieved because over a long period of time and in many instances they had filed papers before the Commission and had participated in its proceedings and hearings through employees and "laymen officers" and, should Rule III-A remain in effect, would in the future not only be put from time to time to added expense but also deprived of the benefit to them of the special skill and knowledge of such employees and officers. They also filed a petition in the Superior Court of

Baltimore City asking a declaration that Rule III-A was invalid. The two cases were consolidated and heard by Judge Cullen, who thought that although the Commission has authority under § 64 of Art. 78 to make such reasonable rules and regulations as it deems necessary to carry out the provisions and purposes of Art. 78,

> "it would not seem that such a rule as is before the Court at the present time would be in furtherance of the exercise of the power of the Commission in carrying out its function * * *. The enforcement or non-enforcement of the Rule would in no way affect the result of the hearing. The function of the Commission is regulatory and not judicial. It may adopt rules and regulations necessary to carry out its regulatory functions, but it seems that the proceedings are only incidental to the exercise of its powers * * *.
>
> "I reluctantly conclude that the General Assembly has reserved unto itself the right to determine who may practice before the Public Service Commission and has not yet exercised its prerogative in that respect. See Art. 10, § 1."

He entered an order setting aside Rule III-A in each case. The Commission appealed under the authorization of Code (1965 Repl. Vol.), Art. 78, § 98.

The Commission under Art. 78, § 1, is given jurisdiction of and power over all public service companies and the legislative blessing that:

> "The powers of the Commission shall be liberally construed; and the Commission shall have the powers specifically conferred by this article, and also all implied and incidental powers necessary and proper to carry out effectually the provisions of this article."

Section 62 gives the Commission the power to administer oaths, examine witnesses and conduct hearings. Section 64 says: "The Commission shall have the power to make such reasonable rules and regulations as it deems necessary to carry out the provisions of this article and any other law relating to the Commis-

sion." Section 76 provides that "All proceedings before the Commission shall be governed by the rules of the Commission, conformably with the provisions of this article. The Commission shall not be bound by the technical rules of evidence or procedure of courts of law or equity." Nevertheless, § 97 provides that any order of the Commission is to be deemed "prima facie correct" and must be affirmed on appeal unless unconstitutional, not within statutory authorization, procedurally unlawful, arbitrary or capricious, or otherwise illegal, or "if the subject of review is an order entered in a contested case after hearing, such order is unsupported by substantial evidence on the record considered as a whole."

The Commission passed the Rule here challenged on the premises, which it earnestly continues to contend are fully sound and supportable, that (a) a contested case before it in which testimony and other evidence is received, law applied, and a record made which, if an appeal is taken, must be tested under the standards of § 97 of Art. 78, involves the practice of law and, therefore, a layman may not lawfully conduct such a case on behalf of an employer or other client, and (b) that the legislature has given the Commission powers of implementation of its functions and of control over its procedures which enable it properly to recognize and forbid such unlawful practice.

Hahn and Baltimore Tank Lines counter by contending (a) that the Commission exercises a naked statutory delegation of power and no statute exists that authorizes it to adopt Rule III-A; (b) that as is conceded, laymen have been permitted to represent their employers before the Commission since its founding in 1910 and this long-standing practice is conclusive of the lack of power in the Commission to forbid them so to do, particularly since the legislature did not act after Attorney General O'Conor in 23 Op. Att'y Gen. 427 (1938) had advised the State Accident Commission that it could adopt a rule requiring that claimants and employees be represented by lawyers only if practice before the Commission constituted the practice of law and this was debatable and should be resolved by a test suit brought by the Bar Association; (c) since one need not be a lawyer to be a member of the Public Service Commission (Art. 78, § 5), it should be inferred that a layman lawfully can ap-

pear in a representative capacity before laymen; (d) it should be inferred that the legislature did not intend the Commission to determine who may practice before it because the Commission is expressly excluded from the Administrative Procedure Act (Code (1965 Repl. Vol.), Art. 41, §§ 244-256), which in § 245 specifically directs each covered agency to adopt rules governing:

> "the formal and informal procedures prescribed or authorized by this subtitle. Such rules shall include rules of practice * * * provided, however, that such rules shall not be construed or implemented so as to interfere with the right of any lawyer to practice before any agency, or so as to grant the right to practice law to anyone not authorized so to do," 

(e) because the legislature in Art. 95A, § 16 (b) has forbidden anyone not a lawyer to be paid or to accept a fee for appearing before the Employment Security Board and in § 229 (d) of Art. 81 specified who may appear in a representative capacity before the Tax Court, it should be inferred that the legislature intends that only it can prescribe what is and what is not the practice of law; (f) the legislature has shown in the Public Service Commission law that laymen may appear before the Commission since in § 77 (a) it provides that the Commission shall receive a complaint from "any person" and in § 79 that "[i]n any contested case begun by complaint, filed by any person * * *, the person complained of shall be entitled to a hearing"; (g) the matter is completely controlled by the decision in *Rehm v. Cumberland Coal Company,* 169 Md. 365, which held that a collection agency was not practicing law in causing to be entered in the People's Court of Baltimore a judgment of $18 for a coal company because the word "attorney" in then § 626 of the Baltimore City Charter providing that no justice of the peace "shall issue a summons except on application * * * by the plaintiff or his attorney * * *," had been used in similar statutes for 114 years as meaning attorney in fact as well as attorney at law, and because the office of justice of the peace is entirely disassociated from the idea of a "court" in the common acceptation of that term, although the office is judicial.

When the question before us is first asked the true answer may not seem easy to give, but deliberate consideration makes it clearly to be perceived. Rule III-A in terms recognizes that the Commission functions legislatively, executively and ministerially, as well as quasi-judicially. It declares the conceded right of an individual to appear in his own behalf no matter in which capacity the Commission is functioning and, by necessary implication, the Rule permits a layman to appear for another in Commission matters that are in nature legislative, executive or ministerial. Only when "the Commission is performing a quasi-judicial function" must "all parties, except individuals appearing in their own behalf," be represented by attorneys-at-law who are "duly admitted and enrolled to practice before the Court of Appeals of this State." What the Rule contemplates as the performance of a quasi-judicial function was illustrated by the chairman of the Commission, now Judge Liss of the Supreme Bench of Baltimore City, when he said at one of the hearings that preceded its adoption:

> "Whatever ruling we make, * * * will primarily be directed toward the questions that arise and require an actual formal hearing before the Commission; for example, a hearing of this kind; for example, also a hearing on rates or where there is a complaint of service that goes to a formal hearing or where there is an extension of territory or where there is a stock proceeding, the approval of an issuance of stock or of an issuance of debentures, or the approval of a payment of a stock dividend; all of these are issues which are brought before us in formal hearings and these are the issues in which there is a question as to whether or not the company must be represented by an attorney."

The chairman at another of the hearings said:

> "The thing that gives us difficulty, and I suppose it's really the crux of this case, is what is to happen when you have a quasi-judicial question to consider, when there are exhibits to be prepared and filed, when there is examination and cross-examination of witnesses to

be prepared, when a record is being made which may ultimately reach the Court of Appeals, and is there not then a requirement that at least, as to that stage of the proceeding, that whoever comes in to be heard before the Commission ought to be represented by counsel."

This Court has spoken as to quasi-judicial functioning by administrative agencies. *Heaps v. Cobb*, 185 Md. 372, 378, said: "Administrative boards in general may be said to act in a quasi-judicial capacity insofar as they have a duty to hear and determine facts and, *based on them*, to make decisions."

*Hyson v. Montgomery County*, 242 Md. 55, involved a contention that the Montgomery County Council, sitting as the District Council in a zoning hearing, was acting in a quasi-judicial capacity and therefore cross-examination of the witnesses was a matter of right. The counter contention was that the Council was acting in a legislative or quasi-legislative capacity. In holding there was a right to cross-examine, Judge Prescott for the Court said:

> "It is elementary that governmental bodies, tribunals, agencies, boards (and by whatever other appellations they may be known), and officials, in the performance of their public duties, exercise functions that are divided into three general categories: executive, judicial, and legislative * * *.

> "Up to the present time, no one has been able to delineate, with precision, and accuracy, an exact formula for determining the line of demarcation between the differences between legislative and judicial functions. These differences, on occasions, are particularly difficult of determination when mixed, blended, or combined functions are given, and exercised by, the same official, board, or agency, 1 Davis, *Administrative Law Treatise*, §§ 1.09, 7.03, which is frequently the case. Compare Cooper, *State Administrative Law*, Ch. 1, Sec. 1.

> * * *

> "We have repeatedly stated and held that the *actual*

*acts of zoning* and rezoning are legislative or quasi-legislative in nature * * *.

"However, this does not mean that the Legislature (or the Council by regulation adopted pursuant to proper authority) cannot prescribe, within lawful and constitutional limitations, the mode of conducting the hearing on a rezoning application, cannot provide for the making of a record at such hearing, or cannot require that such an application 'shall be determined on the basis of the evidence of record,' and shall be approved or disapproved on the merits.

\* \* \*

"It is clear to us, from the general law elsewhere and our previous decisions, that the provisions set forth above make it improper and inaccurate to characterize the whole proceeding at the hearing held by the Council when considering an application for reclassification and its action of denying or granting reclassification as quasi-legislative in nature or quasi-judicial in nature. The above provisions, without question, required the members of the Council to resolve disputed questions of adjudicative facts (as contradistinguished from legislative facts or judicial *action*) concerning particular parties. Davis, *op. cit.*, § 7.03; *Board v. Levitt & Sons, supra.* (Professor Davis, in § 7.02, *op. cit.*, states that adjudicative facts are 'roughly' the kind of facts that go to a jury in a jury case). And, when the Council was considering and determining these adjudicative facts concerning particular parties, it necessarily was performing a quasi-judicial function, even though its final action, in granting or denying the reclassification which was required to be based upon its findings of adjudicative facts, was quasi-legislative in character.

\* \* \*

"We, therefore, as previously indicated, have no hesitancy in holding that the statutes and regulations, set forth above, conferred quasi-judicial functions upon the Council in making its determination of facts at the

hearing. See, in addition to the authorities cited above, 1 & 2 Am. Jur. 2d, *Administrative Law*, §§ 92, 161, 415." [242 Md. at pp. 62, 63, 64-65, 67]

See also *Mandel v. Bd. of County Comm'rs*, 238 Md. 208, a case under the Administrative Procedure Act, of which the Court in *Hyson* said: "We do not mean to indicate that the Council is included in the definition of 'agency' in Code (1965 Repl. Vol.), Article 41, § 244 [a], but refer to the Act only for the purposes of analogy" [242 Md. at 66]; *Schultze v. Montgomery County Bd.*, 230 Md. 76, 80; *Woodlawn Area Citizens Ass'n, Inc. v. Bd. of Co. Comm'rs*, 241 Md. 187; and Oppenheimer, *Administrative Law in Maryland*, 2 Md. L. Rev. 185 (1938).

Beyond question the Public Service Commission exercises quasi-judicial functions when on a record before it, consisting of pleadings (including discovery procedures), exhibits and testimony which later may undergo judicial scrutiny, it must after oral and written arguments determine adjudicative facts and choose the applicable law to produce a decision. Chairman Liss said:

"At some point * * * you get into an adversary situation in which questions of law have to be determined by the Commission and * * * I would say that at least 75 per cent of the actual cases that go to formal hearing here are decided not just on factual matters, but on legal matters as well [and therefore] should it not be required that * * * an attorney should represent the parties"?

We think the Commission had the power to require that an attorney must represent parties before it other than individuals who desire to act for themselves. We have no doubt that when an individual on behalf of his employer or another prepares and files pleadings in a contested case before the Commission and appears at and engages in its trial by the examination or cross-examination of witnesses, in light of the law he has determined to be applicable or controlling and by arguing the case in writ-

ing or orally he engages in the practice of law. A host of cases throughout the country have agreed that he is.[1]

Code (1968 Repl. Vol.), Art. 10, § 1, provides that "[n]o person shall practice the profession or perform the services of ·an attorney at law within this State without being admitted to the bar * * *," and then specifies certain acts and services the doing or. rendering of which will cause one to be deemed an attorney at law. Section 32 of Art. 10 provides:

> "Any person who shall exact, demand, take or receive from any person whatsoever any fee, gratuity, gift or reward for his advice or service as an attorney· at law without having been admitted to the bar agreeably to the provisions of this article shall be guilty of a misdemeanor, and upon conviction thereof shall be liable to a fine of not more than one hundred dollars, or confinement in jail for not more than thirty days, or both fine and imprisonment, in the discretion of the court."

A lay officer or employee of a corporation or a lay partner or employee of a co-partnership who represented his firm be-

---

**1.** See 7 Am. Jur. 2d *Attorneys at Law* §§ 73 and 78; Note, 1964 Wisconsin L. Rev. 469. Cases involving Public Service Commissions include *State v. Childe* (Neb.), 23 N.W.2d 720; *Clark v. Austin* (Mo.), 101 S.W.2d 977; *Smith v. Public Serv. Comm. of Missouri* (Mo.), 336 S.W.2d 491; *State v. Keller* (Wis.), 123 N.W.2d 905, *cert. denied* 377 U. S. 964, *modifying State v. Keller* (Wis.), 114 N.W.2d 796, *vacated* 374 U. S. 102, 10 L.Ed.2d 1026; *Blair v. Motor Carriers* (C. P. Philadelphia, Pa.), 40 Pa. D. & C. 413; *Denver Bar Ass'n v. Pub. Util. Comm.* (Colo. en Banc), 391 P. 2d 467.

Cases involving Industrial Accident Commissions include: *People v. Goodman* (Ill.), 8 N.E.2d 941, 111 A.L.R.1, *cert. denied*, 302 U. S. 728; *Shortz v. Farrell* (Pa.), 193 A. 20; *Ky. State Bar Ass'n v. Henry Vogt Machine Co.* (Ky.), 416 S.W.2d 727; In re Unauthorized Practice of Law (Ohio), 192 N.E.2d 54, 2 A.L.R.3d 712, *cert. denied* 376 U. S. 970; *State v. Wells* (S. C.), 5 S.E.2d 181; *West Virginia State Bar v. Earley* (W. Va.), 109 S.E.2d 420.

Miscellaneous agencies were involved in *Chicago Bar Ass'n v. United Taxpayers of America* (Ct. App. Ill.), 38 N.E.2d 349; In re Unauthorized Practice of Law in Lucas County (C. P. Ohio), 160 N.E.2d 423, *aff. sub nom* Appeal of Bailey (Ct. App. Ohio), 137 N.E.2d 528.

fore the Commission in a contested case would be unlawfully practicing law although no part of his remuneration was allocated to his services as such representative. *State v. Wells* (S.C.), 5 S.E.2d 181.

The powers of the Commission which under § 1 of Art. 78 are to be "liberally construed" include the power under § 76 to have all its proceeding governed by rules not inconsistent with Art. 78, and the power under § 64 "to make such reasonable rules and regulations as it deems necessary to carry out the provisions of [Art. 78]." This Court said in *Montgomery County v. Public Service Commission,* 203 Md. 79, 88:

> "When the Commission acts in a capacity at least quasi-judicial it should act under rules of procedure provided either by the Legislature or by itself * * *. The details of procedure may be supplied by the Commission under its power to make such rules not inconsistent with the laws as are necessary for the exercise of the powers conferred upon it."

The Commission has the power to require that those who propose to engage or do engage in the practice of law before it may legally be authorized to practice law. In so doing, it not only obeys the law but offers itself aid in the solution of the contested factual and legal problems that come before it generally more competent and skilful than otherwise would be offered.

None of the contentions of Hahn and Baltimore Tank Lines requires a different conclusion.

The fact that for sixty years laymen have been permitted to practice before the Commission does not establish a binding administrative construction of the Public Service Commission article. The record makes it clear that the questions here posed were never raised until brought up in 1966, so that there should not reasonably arise a presumption of legislative acquiescence in an administrative determination of an ambiguous legislative provision. The opinion of the Attorney General to the Accident Commission actually came to no conclusion as to the power of that Commission to act as the Public Service Commission acted

in this case (although it is implicit in the opinion that it could adopt such a rule if practice before the Commission was the practice of law), it merely advised the bringing of a test case.

Under our constitutional system of separation of powers, the determination of what constitutes the practice of law and the regulation of the practice and of its practitioners is, and essentially and appropriately should be, a function of the judicial branch of the government. In many States it has been held that the legislative branch cannot constitutionally exercise that judicial function although it may make implementing regulations. In Maryland there has always been a comfortable accommodation in this area. See 52 *Transactions of the Maryland State Bar Association* (1947), pp. 152-181, and *Bastian v. Watkins, Clerk,* 230 Md. 325. The legislature has forbidden the practice of law by one not a lawyer (and specified some "wherefores") in § 1 of Art. 10 and made it a misdemeanor for a layman to practice law in § 32 of Art. 10, but it consistently has recognized that the courts can and should decide in any instance presented to what does and what does not constitute the practice of law. By Ch. 217 of the Laws of 1961 it enacted the Model Act Providing Remedies for the Unauthorized Practice of Law, as §§ 26A to 26F of Art. 10 of the Code (1968 Repl. Vol.). Under this Act the Attorney General or any organized bar association may maintain an action for injunctive relief in an appropriate equity court against "any person who renders, offers to render, or holds himself out as rendering any service which constitutes the unauthorized practice of law." The statute does not to any extent equate or limit what may be enjoined to acts or conduct legislatively proscribed as unlawful practice of law but uses the very broad measure of any "unauthorized practice," and the courts must make the ultimate appraisal of what is unauthorized.

The fact that the legislature has occasionally spoken in specified areas on unlawful practice does not mean that it has attempted to exclude judicial or quasi-judicial bodies from acting at all or in other areas. For example, the legislative choice to specify that no person but a lawyer should be allowed a fee for appearing before the Unemployment Security Board means no more, it would seem, than the desire to offer simple protection

to extremely vulnerable people, largely unable or unwilling as a practical matter to defend themselves, from being preyed on.

It does not follow that because the legislature excluded the Commission from the agencies covered by the Administrative Procedure Act and those agencies have been told by the legislature that their power to make rules stops at a rule that interferes "with the right of any lawyer to practice before any agency" or to grant "the right to practice law to anyone not authorized so to do," that the Commission's powers in this respect are different from those of the covered agencies. The legislative grants of power to the Commission which have been quoted earlier are phrased somewhat differently but they may be soundly and reasonably analogized to those given by the Administrative Procedure Act and certainly the legislature has neither attempted to empower the Commission to bar lawyers from appearing before it nor attempted to empower it to grant the right to practice law before it to one not authorized so to do. In our view if the Commission cannot lawfully or properly, as it cannot, authorize or permit laymen to practice law before it can announce by a general rule that it will not do so.

The argument that the Commission may be composed of laymen and therefore laymen should be able to practice before it has many answers which lead to rejection of the contention. Most of the Commission members have been and presently are lawyers. It is not the place, the forum or the status of the trier of fact and selector of law that determines whether what is done before him is the practice of law but rather the nature, character and quality of the acts and conduct. The philosophy of the argument; specious it seems to us, is that the blind should lead the blind. Under the Constitution the Supreme Court of the United States need not be composed of skilled and experienced lawyers, or even members of the bar, yet it scarcely could seriously be argued that those who as advocates for litigants advise and lead the Court to its decisions should not be required to be lawyers.

That the Public Service Commission law says that "any person" may file a complaint does not mean that if the complaint leads to a formal contested hearing or case that any person may act as a lawyer for another. *Rehm v. Cumberland Coal Com-*

*pany,* 169 Md. 365, does not compel the result sought by Hahn and Baltimore Tank Lines. The decision is distinguishable, grounded as it was on two bases which are not here involved, the first explicit, the second implicit. First, the word "attorney" in the Baltimore City statute had over a period of one hundred years acquired the gloss recognized by the legislature of attorney in fact as well as attorney at law the Court concluded. Second, the act performed by the corporate attorney in fact was so simple and so generally known and understood as not to require for its exercise legal skill, knowledge or training, and the amounts which could be involved under the then jurisdictional limits of the People's Court were so small that the cost to a litigant of retaining a lawyer would not ordinarily have been warranted. The legislature seemingly agreed with this reading of the *Rehm* case, for in amending § 1 of Art. 10 after the decision, it provided in effect that a layman could try a case for another in the People's Court of Baltimore City if the amount involved did not exceed $100.

Upon remand a declaration should be made reflecting the view expressed in this opinion and appropriate orders entered in each case.

> *Orders reversed, with costs, and cases remanded for further proceedings.*

BARNES, J., dissenting:

I dissent because, in my opinion, (1) the Public Service Commission does not, and constitutionally cannot, exercise any judicial or so-called "quasi-judicial" powers or functions so that Rule III-A purports to relate to a non-existent function and is void on its face; (2) assuming, arguendo, that the Commission can or does exercise any "quasi-judicial" function, it has been granted no power by the General Assembly to promulgate Rule III-A; and (3) Rule III-A is too vague and indefinite on its face to be a valid rule.

(1)

As our predecessors stated in *Public Service Comm'n v. Philadelphia B.&W.RR. Co.,* 155 Md. 104, 114, 141 A. 509, 514 (1928):

> "The Public Service Commission of Maryland was created by chapter 180 of the Acts of 1910. It exercises a *naked statutory authority,* and *has no powers* save such as were *expressly granted to it by the legislature,* and *such implied powers* as are *necessary* to enable it to exert its express powers." (Emphasis supplied)

As Judge (later Chief Judge) Henderson aptly stated in *Commissioners of Cambridge v. Eastern Shore Public Service Co.,* 192 Md. 333, 339, 64 A. 2d 151, 154 (1949):

> "The Public Service Commission is essentially a regulatory body."

In the *Commissioners of Cambridge* case it was pointed out that the validity or extent of charter power or franchises of a public service company was a *judicial* question and that the Commission had no power or authority to pass upon such questions. Indeed, the General Assembly would have no power to confer judicial powers upon the Commission in view of the mandatory provisions of Article 8 of the Declaration of Rights of the Maryland Constitution, providing for the separation of governmental powers and which provides:

> "That the Legislative, Executive, and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments *shall assume or discharge the duties of any other."* (Emphasis supplied)

This mandatory language necessarily, in my opinion, prevents the General Assembly, as the legislative branch of the State Government, from constitutionally delegating to any administrative body created by it *any* judicial power or so-called quasi-judicial power. Our predecessors have so held. As Chief Judge Sloan, for a unanimous Court, stated in *Dal Maso v. Board of County Comm'rs of Prince George's County,* 182 Md. 200, 205, 34 A. 2d 464, 466 (1943):

> "The petitioners contend that the order of the defendant amending the zoning regulations is *res judi-*

*cata,* which means, of course, that it has the permanence of a judgment or decree of a court of competent jurisdiction. There is some confusion as to the nature and character of these administrative boards, and there are many opinions and text writers who refer to them as quasi-judicial. They do hear facts and, based on them, make decisions, but those decisions are not judgments or decrees. If their findings, resolutions, or orders are resisted or ignored, they must call on the courts to enforce them. Administrative boards and officials are arms and instrumentalities of the Legislature, and are not judicial at all; they belong to and derive all their authority from the legislative branch under our form of government. In this State, all judicial authority is only such as is provided for by Article 4 of the Maryland Constitution, and it has been decided that only judicial functions can be exercised which find their authority in that Article (*Day v. Sheriff,* 162 Md. 221, 159 A. 602; *Humphreys v. Walls,* 169 Md. 292, 181 A. 735; *Quenstedt v. Wilson,* 173 Md. 11, 194 A. 354; *Levin v. Hewes,* 118 Md. 624, 86 A. 233), and that no court not coming within its provisions can be established in this State. This forbids any power in the Legislature to clothe administrative boards with any judicial authority. There may be states in which it can be done, but Maryland is not one of them."

Notwithstanding this clear holding, this Court, without overruling *Dal Maso,* has from time to time indicated that various administrative boards do exercise so-called quasi-judicial functions which in some way bring with them the incidents of judicial proceedings such as res judicata, and also the right to cross-examine as a constitutional right. I have protested, without avail, against what I consider to be erroneous decisions in this regard. As I stated in my dissenting opinion in *State Insurance Comm'r v. National Bureau of Casualty Underwriters,* 248 Md. 292, 315, 236 A. 2d 282, 295 (1967):

"I have been critical of what I consider a departure from the doctrine of separation of powers by this Court

in a number of prior cases. See my dissenting opinions in *MacDonald v. Board of County Comm'rs of Prince George's County,* 238 Md. 549, 557 to 608, especially pages 602-608, 210 A. 2d 325, 329-358, especially pages 354-358 (1965) ; *Woodlawn Area Citizens Ass'n v. Board of County Comm'rs of Prince George's County,* 241 Md. 187, 201-218, especially pages 203-213, 216 A. 2d 149, 158-168, especially pages 159-165 (1966) and most recently in *Delbrook Homes, Inc. v. Mayers,* 248 Md. 80, 234 A. 2d 880 (1967) ; and my concurring opinions in *Hyson v. Montgomery County Council,* 242 Md. 55, 77-84, 217 A. 2d 578, 592-595 (1966) ; and *Gaywood Community Ass'n v. Metropolitan Transit Authority,* 246 Md. 93, 101-105, 227 A. 2d 735, 739-742 (1967)."

In my dissenting opinion in *Woodlawn Area Citizens Ass'n, Inc. v. Board of County Comm'rs for Prince George's County,* 241 Md. 187, 208-09, 216 A. 2d 149, 162 (1966), I stated:

"In *Schultze v. Montgomery County Planning Board,* 230 Md. 76, 79, 185 A. 2d 502 (1962) and in *Kay Construction Co. v. County Council for Montgomery County,* 227 Md. 479, 486, 177 A. 2d 694 (1962), both cited in the majority opinion, there is *dicta* which indicates that the County Council in Montgomery County does exercise 'quasi-judicial functions.' In my opinion this is unfortunate language, unnecessary to the decisions in those cases, which gives rise to the notion that the holding in *Dal Maso* has been somewhat impaired but not overruled. As I see it, in both cases the County Council was exercising a *'restricted legislative function,'* not a *'quasi-judicial function.'* It has been my observation that when the prefix 'quasi' is appended to a well-defined word, distinctions are blurred, fuzzy thinking is invited and error often results. Its use should be avoided. If the restrictions placed upon the exercise of legislative power are those usually associated with the exercise of judicial functions, one may inquire if the characterization of

the function as 'quasi-judicial' really does any harm and
if the suggested difference in characterization is not
merely a semantic exercise? I think not. These are
quite different concepts and result in different appli-
cations of the requirements of due process of law, de-
pending upon whether a function is 'legislative,' on the
one hand, or 'judicial' on the other. If the function is
legislative, due process of law does not require a hear-
ing, the opportunity for counsel, the taking of testi-
mony (under oath or otherwise), the right of con-
frontation or cross-examination and other time-honored
safeguards associated with the exercise of a judicial
function. The only limitations upon the exercise of
the legislative power are those specifically set forth
in the Constitution, as for example, the prohibition
against the taking of private property other than for
public use and upon the payment of just compensa-
tion, and that the legislation be not unreasonable, arbi-
trary and capricious and *thus* a denial of due process
of law. When the legislative power is delegated by
the General Assembly to a local legislative body the
grant is unlimited, except as limited by the statute mak-
ing the grant of legislative power, subject, of course,
to the constitutional limitations mentioned. In short,
the power of review of a court, either upon an original
proceeding or upon appeal, is limited to the constitu-
tional limitations mentioned *and* such limitations as
the statute imposes."

In short, in my opinion, the Commission has not been, and
could not be, delegated any judicial or quasi-judicial powers by
the General Assembly. All of its powers are legislative and reg-
ulatory in nature as many of our prior cases have indicated.
Rule III-A purports to regulate a non-existent function of the
Commission and is void on its face.

### (2)

If it be assumed for the argument that the Commission can
or has "quasi-judicial" powers and functions, it nevertheless
has not been granted power by the General Assembly to pro-

mulgate Rule III-A.[1] No one contends that any provision of Code (1957), Article 78—The Public Service Commission Law —*specifically* grants such a power to the Commission. Can the grant of such a power reasonably be inferred from the provisions of Article 78 mentioned in the majority opinion? In my opinion it cannot be inferred; on the contrary, the implications are that no such power was intended to be granted by the General Assembly.

For example, the General Assembly conferred certain rights upon *"any* party to *any* hearing" by § 82 of Article 78, including the right to summon witnesses, present evidence, present arguments, cross-examine and submit rebuttal evidence. All of these rights are *usually* associated with judicial proceedings but by § 82, they are granted by the General Assembly for *all proceedings* before the Commission. No distinction is made between types of proceedings (doubtless because it was thought that all proceedings were legislative in nature) and there is no suggestion that any of these rights must be exercised by members of the bar on behalf of "any party to any hearing." If the General Assembly had thought that this policy was desirable in any proceeding it would either have so provided expressly *or* have granted the Commission authority to adopt such a policy by rule, setting up appropriate guides and standards. The absence of any such provision at this likely place in the statutory plan, indicates to me that the General Assembly had no notion of either establishing such a policy itself or of delegating authority to the Commission to adopt such a policy by rule.

Then too, § 76 of Article 78 which provides, in part, that "The Commission should not be bound by the *technical rules of evidence or procedure* of *courts of law or equity"* (emphasis supplied), indicates to me that the General Assembly did not

---

1. The General Assembly might by statute require that parties must represent themselves or be represented by members of the bar, and not by compensated laymen in certain types of proceedings before the Commission even though such proceedings are legislative in character, or even perhaps delegate the power to make such a rule, with appropriate guides and standards to the Commission, but in the instant case it has neither acted itself nor delegated such a power to the Commission.

intend that any proceedings before the Commission should necessarily be conducted by members of the bar who generally conduct proceedings before courts of law or equity. Here again is a likely place for the General Assembly to make provision for limiting the conducting of part of the proceedings by attorneys-at-law and the absence of such a limitation or grant of power to the Commission to compel such a limitation by rule, indicates to me the absence of any legislative intent that the Commission have such power. In my opinion, the statute is clear in this regard.

This is emphasized by the conceded fact that for approximately 60 years—indeed since the original passage of the Public Service Commission Law in 1910—parties have been represented by persons not members of the bar in *all proceedings* before the Commission. There was no idea, apparently, that such representation in *any* proceeding before the Commission was unlawful or constituted the unlawful practice of law. The Commission permitted such representation in *all* cases, doubtless because it was of the opinion that such representation in *all proceedings* was valid, lawful and conferred upon the parties as a matter of right under the Public Service Commission Law. If the statute be thought to be ambiguous in this regard, this contemporaneous construction of the law continuing for approximately 60 years without exception, should be most persuasive to us that this type of representation in all proceedings for all parties was lawful. As Judge Melvin, for the Court, stated in *Wells v. Price,* 183 Md. 443, 457, 37 A. 2d 888, 895 (1944):

> "* * * this Court has already declared in clear language that the long uninterrupted and unvarying construction put upon a statute by administrative officials is entitled to great weight in law, and that courts should refrain from putting a different interpretation upon the statute except for the most potent and urgent reasons. *Arnreich v. State,* 150 Md. 91, 101, 132 A. 430; *American-Stewart Distillery Co. v. Stewart Distilling Co.,* 168 Md. 212, 177 A. 473."

The majority indicates that this well established doctrine of statutory construction is not applicable because "the questions

here posed were never raised until brought up in 1966; so that there could not reasonably arise a presumption of legislative acquiescence in an administrative determination of an ambiguous legislative provision."

The cases indicate to me, however, that the continuous or practical construction of a statute as a rule for the interpretation of ambiguous statutes does not begin its operation with a *challenge* to the administrative practice under the statute; rather it *begins* with the first or contemporaneous administrative practice under the statute and *for this reason* is a valuable guide for the courts in construing the statute as this gives an authoritative construction of the statute *ante litem motam*. When the contemporaneous construction by the administrative agency is long continued, without interruption, the courts will not disregard it except "upon the most imperious grounds." *Graham v. Joyce,* 151 Md. 298, 306, 134 A. 332, 335 (1926).

It cannot be assumed by us that the General Assembly was not familiar with so formidable an administrative construction continued without interruption for so many years; the presumption is to the contrary. See *Dvorine v. Castelberg Jewelry Corp.,* 170 Md. 661, 674, 185 A. 562, 568 (1936).

The long and unvarying construction by the administrative agency of the legislative language "gives the sense of the community" in regard to the terms used by the legislative branch of the State government. Judge Offutt, for the Court, stated the rule as follows in *Leitch v. Gaither,* 151 Md. 167, 176-77, 134 A. 317, 320 (1926):

> "It is said in *Lewis' Sutherland on Statutory Construction,* par. 472: 'The aid of contemporaneous construction is invoked where the language of a statute is of doubtful import and cannot be made plain by the help of any other part of the same statute, nor by the assistance of any act *in pari materia* which may be read with it, nor of the course of the common law up to the time of its enactment. Under such circumstances the court may consider what was the construction put upon the act when it first came into operation. Where this has been given by enactment it is conclusive. A

contemporaneous construction is that which it received soon after its enactment. This, after the lapse of time, without change of that construction by legislation or judicial decision, has been declared to be generally the best construction. It gives the sense of the community as to the terms made use of by the legislature. If there is ambiguity in the language, the understanding of the application of it when the statute first goes into operation, sanctioned by long acquiescence on the part of the Legislature and judicial tribunals, is the strongest evidence that it has been rightly explained in practice. A construction under such circumstances becomes established law.' And this court in a recent case has announced the same rule. *Burroughs Adding Machine Co. v. State,* 146 Md. 192."

It should also be kept in mind in this connection that by § 60 of Article 78 of the Commission, itself, "may recommend or prepare legislation as to any matter within or related to its jurisdiction." It is significant, I think, that for approximately 60 years the Commission did not find it necessary or in the public interest to request the General Assembly to enact the substance of Rule III-A or to grant the Commission the power to adopt it by rule, with appropriate guides and standards. Then too, it should be kept in mind that there was a general revision, with a repeal of the old Public Service Commission Law and the enactment of a new statute, by Chapter 441 of the Acts of 1955. Even in this general revision, no such power was granted.

In addition to the contemporaneous and uninterrupted practice for some 60 years by the Commission, itself, the Attorney General of Maryland in his opinion to the State Industrial Accident Commission (23 Op. Atty. Gen. 427) in 1938 in regard to the rule-making power of the State Industrial Accident Commission on the subject matter involved in Rule III-A, stated:

"We find nothing in the statute to indicate a legislative intent to allow the Commission, which need not be composed of lawyers, to limit appearance before it."

The Workmen's Compensation Law at the time of the opinion gives rule-making powers as broad or perhaps even broader than those granted to the Public Service Commission. It is correct, as the majority opinion points out, that the Attorney General in the opinion mentioned, reached *no conclusion* in regard to the power of the State Industrial Accident Commission to adopt a rule similar to Rule III-A as it advised the bringing of a test case, but the opinion did state that the Attorney General found nothing in the Workmen's Compensation Law to indicate a legislative intent that it had such a power.

The principal thrust of the majority's opinion sustaining the power of the Commission to adopt Rule III-A is that the appearance of laymen, representing parties, and their participation in the conduct of proceedings of a "quasi-judicial" nature before the Commission is the unlawful practice of law and hence the Commission may by rule prevent this alleged unlawful practice of law by rule. I cannot agree with either of these statements.

In the first place, such an appearance and participation by a layman representing a party before the Commission is not, in my opinion, unlawful practice of law in Maryland, whatever may be the holdings of courts of other States. We decided in *Bastian v. Watkins*, 230 Md. 325, 187 A. 2d 304 (1963), that the admission of a resident of Maryland to practice law in this State is a legislative and not a judicial function. Judge Horney, for the Court, stated in *Bastian*:

> "It has long been recognized that the admission of a resident of Maryland to practice law is a legislative, not a judicial, function in that the right may constitutionally be regulated by statute. See *In re Maddox,* 93 Md. 727, 50 Atl. 487 (1901). See also *In Re Taylor,* 48 Md. 28 (1877) ; *State v. Johnston,* 2 H. & McH. 160 (1786)." (230 Md. at 329, 187 A. 2d at 306)

The General Assembly by the Act of 1898, Chapter 139 gave exclusive power to this Court to admit applicants to practice law and this Court has exercised this power since that time. The General Assembly, however, has never delegated to us the

power to determine what constitutes the unlawful practice of law, but has exercised this power itself, beginning with Chapter 48 of the Acts of 1715.

Article 10, § 1 of the Maryland Code (1968 Repl. Vol.) provides as follows:

> "No person shall practice the profession or perform the services of an attorney at law within this State without being admitted to the bar as hereinafter directed; and any person who shall give legal advice, represent any person in the trial of the case at law or in equity including the trial of any case before any trial magistrate or judge of any people's court or any proceedings conducted in orphans' courts of the State, or in cases before the People's Court of Baltimore City where the amount involved exceeds the sum of $100.00 except cases arising under §§ 455 to 462, inclusive, of the Charter and Public Local Laws of Baltimore City (1949 Edition) or prepare any written instrument affecting the title to real estate, or give advice in the administration of probate of estates of decedents in any of the orphans' courts of this State, for pay or reward *shall be deemed an attorney at law for purposes of this article.*" (Emphasis supplied)

Section 32 of Article 10 implements the provisions of § 1 and provides:

> "Any person who shall exact, demand, take or receive from any person whatsoever any fee, gratuity, gift or reward for his advice or service as an *attorney at law* without having been admitted to the bar agreeably to the provisions of this article shall be guilty of a misdemeanor, and upon conviction thereof shall be liable to a fine of not more than one hundred dollars, or confinement in jail for not more than thirty days, or both fine and imprisonment, in the discretion of the court." (Emphasis supplied)

By the Act of 1961, Chapter 217, the General Assembly adopted an "ALTERNATIVE REMEDY FOR THE UNAUTHORIZED PRACTICE OF LAW." This was the Model

Act Providing Remedies for the Unauthorized Practice of Law and provided that the Attorney General or any organized bar association in Maryland "may maintain an action for injunctive relief in the circuit court of any county or in the equity courts of the Supreme Bench of Baltimore City against any person who renders, offers to render, or holds himself out as rendering any service which constitutes the unauthorized practice of law" (Code (1957), Article 10, § 26A (1968 Repl. Vol.)). It was further provided in the Act of 1961 that the "remedies and procedures provided in this subtitle are in addition to and not in substitution for other available remedies and procedures." (Code (1957), Article 10, § 26C (1968 Repl. Vol.)).

For both the purposes of criminal prosecution under § 32 or for injunctive relief under § 26A, the unlawful practice of law is defined in § 1 of Article 10. In regard to representation of persons in proceedings, the definition is limited to *courts* of law or equity, before any *trial magistrate* or judge of any *people's court* or any proceedings conducted in *orphans' courts* of the State, or in cases before the *People's Court of Baltimore City* where the amount exceeds the sum of $100 except cases arising under §§ 455 to 462 of the Baltimore City Charter (landlord and tenant cases in Baltimore City). Not only is there no mention whatever of the representation of persons not members of the bar before administrative tribunals, but such representation is not the practice of law in landlord and tenant cases and cases involving less than $100 in the *People's Court of Baltimore City*. How then does an appearance of a person not a member of the bar for a party before the Commission constitute the unlawful practice of law under the Maryland statute? It seems to me that it clearly does not as the inclusion of the courts before which, with certain exceptions, representation by laymen is stated to be unlawful practice of law, necessarily excludes administrative bodies not mentioned in the statute, in accordance with the maxim *inclusio unius est exclusio alterius*. See *American Security and Trust Co. v. New Amsterdam Casualty Co.*, 246 Md. 36, 41, 227 A. 2d 214, 215-17 (1967), in which we construed Code (1957), Article 39B, § 9 and in which Judge Horney, for the Court, stated:

"Clearly the trust company insofar as the record shows was not a purchaser for a fair consideration and only a purchaser is afforded the provisions of the statute. Had the legislature intended to include a mortgagee within the terms of the statute, it would undoubtedly have done so, and since it did not, the implication is that mortgagees were purposely excluded."

See also *Gay Investment Co. v. Comi,* 230 Md. 433, 438, 187 A. 2d 463, 466 (1963).

Our predecessors in *Rehm v. Cumberland Coal Co.,* 169 Md. 365, 181 A. 724 (1935), held that the representation by a collection agency of a party before the presiding justice of the People's Court of Baltimore City (as then constituted) in a case involving $18 was not practicing law under Article 10 of the Maryland Code. Judge Johnson, for the Court, stated:

"Briefly stated, Rehm's contention is that the conduct of the collection agency in the People's Court of Baltimore City was violative of the spirit and intent of the above sections of the Code, the agency having no right to practice the profession of law; that the word 'attorney' as used in section 626 of the Baltimore City Charter, above quoted, necessarily means 'attorney at law' and, the agency not being such, the People's Court of Baltimore City acquired no jurisdiction over the debtor, and the judgment rendered is null and void.

"We have been referred by appellant to a number of decisions in other states holding that the word 'attorney,' when used in a statute, means 'attorney at law,' and apparently taking the view that one who participates in the trial of causes before a justice of the peace is engaged in the practice of law, but such decisions are not persuasive in this case, when we consider that this word has been used by the Legislature in several statutes relating to procedure before justices of the peace in Baltimore City, beginning as early as 1821. It must be presumed that in the use of the word the Legislature was fully cognizant of the fact that throughout this period it had not been accepted by the public as be-

ing synonymous with 'attorney at law,' and that by its continued use of the word in subsequent statutes for more than a century it acquiesced in that view.

\* \* \*

"We are, therefore, of the opinion that the acts of the collection agency in this case did not amount to unlawful practice of law within the meaning of statutes referred to, that its conduct as agent of the coal company in the Baltimore City Court was legally permissible, and the People's Court acquired jurisdiction over the parties." (169 Md. at 367-68, 181 A. at 725)

Judge Johnson also pointed out that although a justice of the peace is a "judicial officer" under the provisions of the Maryland Constitution, his office is not associated with the idea of a "court." In the present case, the Public Service Commission is likewise not associated with the idea of a "court" and is not mentioned in the Constitution of Maryland as a "judicial body."

If representation of a party by a person not a member of the bar in a case before a justice of the peace—the presiding justice in the People's Court of Baltimore City (as then constituted)—and declared to be a judicial office by the Maryland Constitution, is not the unlawful practice of law, *a fortiori,* such representation before the Commission is not the unlawful practice of law. The majority seeks to distinguish *Rehm* from the instant case because it is thought to be grounded "on two bases which are not here involved, the first explicit, the second implicit. First, the word 'attorney' in the Baltimore City statute had over a period of one hundred years acquired the gloss recognized by the legislature of attorney in fact as well as attorney at law the Court concluded. Second, the act performed by the corporate attorney in fact was so simple and so generally known and understood as not to require for its exercise legal skill, knowledge or training, and the amounts which could be involved under the then jurisdictional limits of the People's Court were so small that the cost to a litigant of retaining a lawyer would not ordinarily have been warranted." In my opinion, this distinction is not persuasive. The opinion in *Rehm* indicates that the appellant also relied upon the sections of Article 10

punishing the unlawful practice of law and I find nothing in the opinion that indicates the alleged "implicit" base for the opinion. What Judge Johnson stated was:

"Although under the Constitution of the State a justice of the peace is a judicial officer, his office is entirely disassociated from the idea of a 'court,' in the common acceptation of that term. There is no special pleading before the justice (Code, art. 52, sec. 32), and the parties litigant, in person or by agents, have a right to participate in the proceedings. Md. Const. art. 4, sec. 1; *Thomas' Procedure in Justice Cases,* sec. 2B, Authority of Attorney-at-Law; 16 R. C. L., p. 330; *Weikel v. Cate,* 58 Md. 105; *Kane v. State,* 70 Md. 546, 550, 17 A. 557; *Benton v. Stokes,* 109 Md. 117, 71 A. 532; *Levin v. Hewes,* 118 Md. 624, 86 A. 233." (169 Md. at 368, 181 A. at 725)

In regard to the acquisition of the word "attorney" of a "gloss" over the period of 100 years, it might well be said that the contemporaneous and uninterrupted practice before the Public Service Commission for some 60 years had also given the Public Service Commission Law a "gloss" which this Court should recognize. In my opinion, the majority has not successfully distinguished *Rehm,* which, as I have indicated, I think is controlling in the present case.

Nor do I think that, assuming for the argument only, that the representation of a layman of a party before the Commission in "quasi-judicial" proceedings in the unlawful practice of law, the Commission is for that reason justified in promulgating Rule III-A. Most certainly there is nothing in the Public Service Commission Law which remotely suggests that one of the duties of the Commission is to suppress the unlawful practice of law. This suppression is accomplished by the *Courts* pursuant to the Acts of Assembly already mentioned, by a criminal *court* in which the accused would have a right to a trial by jury *or* by an equity suit in an equity *court* for an injunction under the alternative provisions of §§ 26A to 26F of Article 10. The General Assembly has not conferred upon the Commission the right to determine what constitutes the unlawful practice of law

and to provide a third alternative method of suppressing it. No doubt if the General Assembly had so intended, it would have added an appropriate section to the Act of 1961, Chapter 217 providing remedies for the unauthorized practice of law.

It is difficult for me to perceive how there can be any "analogy" of the rule-making power of the Commission to that of those rule-making administrative bodies under the Administrative Procedure Act, Maryland Code, Article 41, §§244-256, in view of the express provisions of §244 of Article 41 that the Public Service Commission is excepted from the definition of agencies to which the Act applies.

### (3)

In my opinion, the language of Rule III-A is too vague and indefinite on its face to be a valid rule. Rule III-A requires that all parties, except individuals appearing in their own behalf, shall be represented by attorneys-at-law "when the Commission is performing a quasi-judicial function as distinguished from a legislative, executive or a ministerial function." There is, however, no definition of what the "quasi-judicial function" is. As I am not able to know what it is, I believe that parties before the Commission may have the same difficulty. To illustrate the difficulty presented to a party in understanding the scope and application of this vague, undefined term, I refer to the description by the Chairman of the Commission, now Judge Liss, of what, in his opinion, a "quasi-judicial" question was as set forth in the majority opinion:

> "The thing that gives us difficulty, and I suppose it's really the crux of this case, is what is to happen when you have a quasi-judicial question to consider, when there are exhibits to be prepared and filed, when there is examination and cross-examination of witnesses to be prepared, and when a record is being made which may ultimately reach the Court of Appeals, and is there not then a requirement that at least, as to that stage of the proceeding, that whoever comes in to be heard before the Commission ought to be represented by counsel."

All of the described activities are present in a rate case, but

our predecessors have held several times that the determination of rates is the exercise by the Commission of a legislative function. *Bosley v. Dorsey,* 191 Md. 229, 238, 60 A. 2d 691, 695 (1948); *Public Service Commission v. United Railways & Elec. Co.,* 155 Md. 572, 580, 142 A. 870, 873 (1928); *Public Service Commission v. Northern Central Ry. Co.,* 122 Md. 355, 388, 90 A. 105, 118 (1914). Who then can tell from the rule when a "quasi-judicial" function is involved when there is no definition or criteria in the rule and the only statement in the record by the Chairman of the Commission relating to the quasi-judicial function applies *equally* to a recognized legislative function? In my opinion, the provisions of Rule III-A are not sufficiently clear and definite to be a valid exercise of the rule-making power by the Commission if the Commission had such power, and thus was unreasonable, and arbitrary in the legal sense, resulting in a denial of due process of law forbidden by Article 23 of the Declaration of Rights of the Maryland Constitution. See *Blum v. Engelman,* 190 Md. 109, 57 A. 2d 421 (1948), in which Judge Delaplaine, for the Court, stated:

> "It is well settled that a statute which prohibits the doing of an act in terms so vague that persons of ordinary intelligence must necessarily guess at its meaning and differ as to its application violates the constitutional guarantee of due process of law." (190 Md. at 113, 57 A. 2d at 422)

The same doctrine applies to rules promulgated by administrative bodies. See *Northwest Steel Rolling Mills, Inc. v. Kendall,* 210 F. 2d 283 (U.S. Emergency Ct. of Appeals 1954), *cert. denied,* 347 U. S. 960, 74 S. Ct. 709, 98 L. Ed. 1104 (1954); *United States v. Pope,* 189 F. Supp. 12, 21 (S.D.N.Y. 1960); *In re Peppers,* 189 Cal. 682, 688, 209 P. 896, 898 (1922). See also *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 233, 107 A. 2d 93, 97 (1954); 73 C.J.S. *Public Administrative Bodies and Procedure,"* §100 at 418-19 (1951).

Judge Cullen, in my opinion, was correct in passing the order of July 2, 1968 in which Rule III-A was annulled, set aside and made void as beyond the power of the Commission. For that reason, as well as for the other reasons stated above, I would affirm that order.