## ACCOUNTANTS

**UNAUTHORIZED PRACTICE OF LAW – BENEFICIAL OWNERSHIP INFORMATION REPORTING – WHETHER ASSISTANCE BY A CERTIFIED PUBLIC ACCOUNTANT WITH THE BENEFICIAL OWNERSHIP INFORMATION REPORTING REQUIREMENT OF THE CORPORATE TRANSPARENCY ACT WOULD CONSTITUTE THE UNAUTHORIZED PRACTICE OF LAW**

May 8, 2024

*Dr. Jan L. Williams*
*Chair, State Board of Public Accountancy*

*Christopher E. Dorsey*
*Executive Director, State Board of Public Accountancy*

In 2021, Congress enacted the Corporate Transparency Act (the "Transparency Act" or the "Act") to help law enforcement investigate money laundering and other illicit activity conducted through shell companies. The Act will require millions of corporations and limited liability companies to identify their "beneficial owners" to the Financial Crimes Enforcement Network ("FinCEN"), a unit in the U.S. Department of the Treasury. Each "reporting company" covered by the Act must file a Beneficial Ownership Information Report ("BOIR") with FinCEN by a certain deadline. Many legal entities thus will need to determine whether they are "reporting companies" and, if they are, will need to complete and submit a BOIR.

On behalf of the State Board of Public Accountancy, you requested an official opinion of the Attorney General analyzing whether, and under what circumstances, a certified public accountant ("CPA") who prepares a BOIR for a client or assists a client with BOIR preparation would be engaged in the unauthorized practice of law. You suggested that businesses, especially small businesses, may seek help from their regular CPA in complying with the Act. But, if BOIR preparation or advice is "the practice of law," then nonlawyers may not provide that service without attorney supervision. You thus asked for "guidance with respect to what CPA activities relating to BOI reporting would and would not constitute unauthorized practice of law."[1]

---

[1] We received comments on this opinion request from the Maryland Association of Certified Public Accountants ("MACPA"). Letter from Rebekah Olson, CPA, Executive Director, MACPA, to Office of the

In Maryland, the authority to define "the practice of law" rests with the courts, which have developed the definition on a case-by-case basis. To answer your question, then, we must attempt to predict how the courts would evaluate different degrees of CPA involvement in this area. Although we cannot draw bright lines or address every hypothetical situation, we will offer our best guidance consistent with precedent.

In our opinion, to take the easier part of your question first, a CPA clearly may provide clients with general information about the BOIR requirement that is not particularized to any specific client's situation. Similarly, if a client were to determine for itself that it is a "reporting company" covered by the Act and provide its CPA with a list of its beneficial owners, the CPA could perform the ministerial tasks of gathering the necessary contact information for those beneficial owners, filling out the BOIR form, and filing it with FinCEN.

In addition, although the question is closer, we think there will also be many situations where a CPA can help a client determine whether it is a "reporting company" or assist a client with identifying its beneficial owners. More specifically, we think CPAs may provide a client with the instructions and guidance FinCEN has published for completing the BOIR form; walk the client through FinCEN's instructions (which are designed for nonlawyers); define terms in the instructions that are within common knowledge for a layperson or CPA; and help the client answer factual questions from the client's records or the CPA's own knowledge.

But a CPA who goes beyond those types of activities is at much greater risk of engaging in unauthorized law practice. As discussed in greater detail below, to the extent a CPA's BOIR assistance requires the knowledge, skills, and training of a lawyer—such as application of the general legal principles of statutory or contract interpretation, analysis of legal precedent, or identifying legal issues in a client-provided fact pattern (so-called "issue spotting")—that assistance may violate the prohibition on unauthorized practice of law.[2]

---

Attorney General (Mar. 1, 2024) ("MACPA Comments"). We thank MACPA for its comments, which we have considered in preparing this opinion.

[2] Our analysis is limited to BOIR preparation or assistance by CPAs who are not also attorneys. We do not opine on any other area of CPA

**I**
**Background**

**A.     *The Unauthorized Practice of Law***

Restrictions on who may practice law have a long history in Maryland.   Starting in 1715, a series of acts of the General Assembly required courts, and then boards of attorneys appointed by the courts, to examine would-be lawyers for competence and character.  William H. Adkins, II, *What Doth the Board Require of Thee?*, 28 Md. L. Rev. 103, 104-05 (1968).  But these statutes only regulated attorneys' right to appear in court; law practice outside of court remained unregulated.  *See* Md. Ann. Code, Art. 10, §§ 1-16 (1888); *see also* Barlow F. Christensen, *The Unauthorized Practice of Law:  Do Good Fences Really Make Good Neighbors— Or Even Good Sense?*, 5 Am. Bar Found. Res. J. 159, 180-81, 186-87 (1980) (explaining that the same was true for most states until the early twentieth century).

The General Assembly broadened the unauthorized practice prohibition in 1898, when it authorized contempt sanctions "for assuming to be any attorney . . . and acting as such without authority" regardless of the setting.  1898 Md. Laws, ch. 31.  Two years later, the Legislature made it a misdemeanor for a non-Bar member to receive payment for "advice or services as an attorney at law."  1900 Md. Laws, ch. 699.

To clarify the scope of the prohibition, the General Assembly in 1908 enacted a definition of law practice:  "[A]ny person who shall give any legal advice, represent any person in the trial of any case at law or in equity, or prepare any written instrument affecting the title to real estate, for pay or reward," would be deemed to be practicing law.  1908 Md. Laws, ch. 638.  Over the following decades the Legislature would make minor adjustments to this definition.  *See, e.g.*, 1961 Md. Laws, ch. 456 (adding estate administration advice on Orphans' Court matters to the definition of law practice).

---

activity or on whether other types of licensed professionals, or nonprofessionals, may provide BOIR assistance to the same extent as CPAs.  Of course, CPAs who are also Maryland Bar members may practice law in Maryland to the extent allowed by the two professions' ethical rules.

In 1969, however, the Supreme Court of Maryland[3] held that the regulation of the practice of law, and more specifically "the determination of what constitutes the practice of law," is vested in the Judicial Branch. *Public Serv. Comm'n v. Hahn Transp., Inc.*, 253 Md. 571, 583 (1969). The Court has rested this principle both on the historical understanding that attorneys are "officers of the court," and on the recognition that in our adversarial system, the Judiciary cannot perform its functions without "a vigorous, honorable and qualified bar" to present and develop cases. *Attorney General v. Waldron*, 289 Md. 683, 693-96 (1981). But the power the Court recognized in *Hahn Transportation* extends beyond the courthouse; the Court there held that appearance before quasi-judicial administrative agencies was also the practice of law subject to judicial regulation. 253 Md. at 580-81.

The Court in *Hahn Transportation* did acknowledge the validity of legislation implementing and supporting judicial authority over the legal profession. *Hahn Transp.*, 253 Md. at 583; *see also Waldron*, 289 Md. at 698. For example, the General Assembly has continued to enact mechanisms to enforce the unauthorized-practice prohibition. Although at one time bar associations could seek injunctive relief against unauthorized practice, *see* 1961 Md. Laws, ch. 217, only the Office of the Attorney General and the Attorney Grievance Commission's Office of Bar Counsel now have that authority, Md. Code Ann., Bus. Occ. & Prof. ("BO&P") § 10-406. Unauthorized practice of law also remains a misdemeanor punishable by fine and/or imprisonment. BO&P §§ 10-601, 10-606.

The courts have continued to cite the General Assembly's definition of the practice of law, though they have not treated it as binding. *See, e.g.*, *Attorney Grievance Comm'n v. Jackson*, 477 Md. 174, 200 n.11 (2022). The definition, now codified at § 10-101(h) of the Business Occupations and Professions Article, states:

> (1) "Practice law" means to engage in any of the following activities:
>
> (i) giving legal advice;

---

[3] Until December 2022, the Supreme Court of Maryland and the Appellate Court of Maryland were known as the Court of Appeals and the Court of Special Appeals, respectively. This opinion uses the courts' current names throughout for consistency.

(ii) representing another person before a unit of the State government or of a political subdivision; or

(iii) performing any other services that the Supreme Court of Maryland defines as practicing law.

(2) "Practice law" includes:

(i) advising in the administration of probate of estates of decedents in an orphans' court of the State;

(ii) preparing an instrument that affects title to real estate;

(iii) preparing or helping in the preparation of any form or document that is filed in a court or affects a case that is or may be filed in a court; or

(iv) giving advice about a case that is or may be filed in a court.

In general, though, the Maryland courts since 1969 have developed the definition of "practice of law" in a common-law fashion. Rather than "craft an all-encompassing definition," the courts will "look at the facts of each case and determine whether they 'fall within the fair intendment of the term'" "practice of law." *E.g.*, *Jackson*, 477 Md. at 200-01 (quoting *Attorney Grievance Comm'n v. Hallmon*, 343 Md. 390, 397 (1996)).

The prohibition on unauthorized practice of law aims to protect both the courts and the public from incompetent or unethical would-be practitioners. *See, e.g.*, *In re R.G.S.*, 312 Md. 626, 638 (1988); *see also*, *e.g.*, Restatement (Third) of the Law Governing Lawyers § 4 cmt. b (Am. Law Inst. 2000). Because lawyers are subject to rules governing their competence and ethics, courts can rely on lawyers' assertions. *See* Susan B. Schwab, Note, *Bringing Down the Bar: Accountants Challenge Meaning of Unauthorized Practice*, 21 Cardozo L. Rev. 1425, 1433 n.39 (2000). "Law practice" by individuals who lack a lawyer's training and ethical duties thus harms not only clients but also the administration of justice more generally. *See* 56 *Opinions of the Attorney General* 5, 8 (1971); 44 *Opinions of the Attorney General* 443, 444-45 (1959). So even a client's free and fully informed consent cannot authorize a nonlawyer to practice law on their behalf. *See Turkey Point Prop. Owners' Ass'n v. Anderson*, 106 Md. App. 710, 717-18 (1995).

That said, as scholars have recognized, it can sometimes be difficult to define, consistently and coherently, what activities (outside of litigation, and activity ancillary to litigation) constitute "the practice of law." *See, e.g.*, Deborah L. Rhode, *Policing the Professional Monopoly: A Constitutional and Empirical Analysis of Unauthorized Practice Prohibitions*, 34 Stan. L. Rev. 1, 81-85 (1981); Adam J. Smith, *Unauthorized Practice of Law and CPAs: A Law of the Lawyers, by the Lawyers, for the Lawyers*, 23 U. Fla. J.L. & Pub. Pol'y 373, 381-85 (2012). This question is especially difficult considering that the practice of many other professions involves applying, or at least understanding, aspects of law. *See, e.g.*, Pamela A. McManus, *Have Law License; Will Travel*, 15 Geo. J.L. Ethics 527, 541-42 (2002). Certified public accountancy is one such profession.

## B.   *Certified Public Accountants*

Accountants, like lawyers, offer a wide variety of services. These services most often involve the collection, organization, and validation of financial information. *See, e.g.*, *Comprehensive Accounting Serv. Co. v. Maryland State Bd. of Pub. Accountancy*, 284 Md. 474, 478 (1979); *Accountant's Soc'y of Va. v. Bowman*, 860 F.2d 602, 604-05 (4th Cir. 1988). But the work of accountants "generally go[es] beyond simple auditing and bookkeeping" and may include, for example, "financial management and planning advice." 13 N.Y. Jur. 2d *Businesses & Occupations* § 181 (Apr. 2024 update).

The definition of *certified public* accountancy is narrower.[4] In Maryland, CPAs are licensed and regulated by the State Board of Public Accountancy under the Maryland Public Accountancy Act, Title 2 of the Business Occupations and Professions Article. Only a CPA who has met the "stringent educational, experience and other eligibility requirements" for licensure, *Comprehensive Accounting*, 284 Md. at 476, may "practice certified public accountancy," BO&P § 2-301. The "practice [of] certified public accountancy" is defined as:

---

[4] The Maryland Public Accountancy Act expressly preserves the right of non-CPAs to provide "bookkeeping and accounting services" as long as those services fall outside the definition of certified public accountancy in BO&P § 2-101(m). *See* BO&P § 2-102(a)(3). And certain non-CPAs may prepare tax returns. BO&P §§ 21-102(b), 21-301.

(1) conducting an audit, review, or compilation of financial statements;

(2) conducting any examination, review, or agreed-upon procedures engagement to be performed in accordance with the Statements on Standards for Attestation Engagements issued by [the American Institute of Certified Public Accountants]; or

(3) providing a written certificate or opinion offering positive or negative assurance or full or limited assurance on the correctness of the information or on the fairness of the presentation of the information in:

(i) a financial statement;

(ii) a report;

(iii) a schedule; or

(iv) an exhibit.

BO&P § 2-101(m).  To summarize at the expense of some nuance, then, the special domain of CPAs is to provide, for the benefit of third parties, a degree of written assurance on the fairness or correctness of financial statements or other information provided by their clients.[5]

---

[5] An "audit" produces an opinion on the correctness of the information, or the fairness of the presentation of the information, in financial statements.  84 *Opinions of the Attorney General* 3, 5, 14 (1999); 66 *Opinions of the Attorney General* 190, 190 (1981).  A "review" produces a "limited assurance" that the accountant is not aware of any material modifications that must be made to the financial statements to conform to generally accepted accounting principles.  84 *Opinions of the Attorney General* at 6, 15; 66 *Opinions of the Attorney General* at 193-94.  A "compilation" ordinarily involves no assurance at all, 84 *Opinions of the Attorney General* at 5, and so the Public Accountancy Act allows non-CPAs to prepare compilations, *but* only with certain disclaimers.  BO&P § 2-102(a)(3)(iii)(2).  Thus, the preparation of compilations *without* disclaimers is limited to CPAs.  *See id.*; BO&P § 2-101(m)(1).  Finally, the American Institute of Certified Public Accountants ("AICPA") Statements on Standards for Attestation Engagements, referenced in BO&P § 2-101(m)(2), govern the preparation of opinions or conclusions about subject matter other than financial statements, such as "a schedule of investment returns, the effectiveness of an entity's controls over the security of a system, or a statement of greenhouse gas emissions."  AICPA, *U.S. Attestation*

CPAs can also offer services outside of this exclusive bailiwick, unless prohibited by some other law or their own professional code of conduct. *See* COMAR 09.24.01.06C-E (establishing ethical limits on CPAs' other services). The American Institute of Certified Public Accountants ("AICPA") promulgates standards for various practice areas other than core CPA practice, such as management consulting and personal financial planning. AICPA, *Statement on Standards for Consulting Services No. 1* (1991); AICPA, *Statement on Standards in Personal Financial Planning Services* (2015).

Relevant here, a practice has apparently developed of CPAs helping clients comply with certain federal statutory reporting requirements. *See* MACPA Comments at 2. CPAs have long assisted clients with tax return preparation, *see, e.g.*, Erwin N. Griswold, *A Further Look: Lawyers and Accountants*, 41 A.B.A. J. 1113, 1115-16 (1955), as Maryland law expressly recognizes, *see* BO&P § 21-102(b)(1) (exempting CPAs from State licensing requirements for tax return preparers). A CPA practice of assisting with other form-based federal reporting and disclosure requirements may have evolved by analogy to tax practice. For example, according to MACPA, CPAs help their clients comply with federal requirements to disclose foreign bank accounts and interests in foreign corporations. *See* MACPA Comments at 2; FinCEN, *BSA Electronic Filing Requirements for Report of Foreign Bank and Financial Accounts* (Jan. 2017) ("FBAR Instructions"); IRS, *Instructions for Form 5471: Information Return of U.S. Persons with Respect to Certain Foreign Corporations* (Jan. 2024 revision). Another new area where some CPAs are considering offering services is the beneficial ownership disclosure requirement of the Corporate Transparency Act.

## C.    *The Corporate Transparency Act*

Congress enacted the Corporate Transparency Act as part of the National Defense Authorization Act for Fiscal Year 2021. Pub. L. No. 116-283, tit. LXIV, 134 Stat. 3388, 4604 (2021) (codified at 31 U.S.C. § 5336). The Act's purpose was to help law enforcement pursue bad actors who use shell companies—often many layers of them—to conceal their illicit activities and their

---

*Standards—AICPA (Clarified)* §§ .01, .06 (2023). Originally, non-CPAs in Maryland could provide all of these services except audits. *See* 84 *Opinions of the Attorney General* at 20. But later amendments expanded the definition of CPA practice to include reviews, compilations, and attestations. *See* 2011 Md. Laws, ch. 229; 2015 Md. Laws, ch. 110.

movement of funds and assets. *See id.* § 6402. Congress sought to pierce the shells by "providing for the collection of beneficial ownership information for corporations, limited liability companies, or other similar entities." *Id.*[6]

Compliance with the Act involves two steps. The first step is for an entity to determine whether it is subject to the Act. The Act's requirements apply to any "reporting company." *See* 31 U.S.C. § 5336(b)(1). Every corporation, LLC, or other entity that is formed by filing with a state Secretary of State or analogous office, as well as every foreign corporation, LLC, or other entity that registers to do business in the United States through such an office, is presumptively a reporting company. *Id.* § 5336(a)(11)(A).

The Act then sets out a number of exemptions from "reporting company" status (and thus from the Act's reporting requirements). *Id.* § 5336(a)(11)(B). Most of the exemptions are for entities regulated under other provisions of state or federal law, such as securities issuers, banks, insurance companies, public utilities, and governmental units. *Id.* § 5336(a)(11)(B)(i)-(xx). Another exemption applies to entities that have more than twenty full-time employees, a physical office, and more than $5 million in gross sales, all in the United States. *Id.* § 5336(a)(11)(B)(xxi). Conversely, an entity is also exempt if it is inactive; to qualify as inactive an entity must have engaged in no significant recent financial transactions, must have no assets, and must meet certain other requirements. *Id.* § 5336(a)(11)(B)(xxiii). Wholly owned

---

[6] On March 1, 2024, the United States District Court for the Northern District of Alabama held that the Transparency Act is unconstitutional because it exceeds the enumerated powers of Congress. *National Small Bus. United v. Yellen*, No. 5:22-cv-1448-LCB, 2024 WL 899372, at *21 (N.D. Ala. Mar. 1, 2024). The court permanently enjoined the federal government from enforcing the Act, but only against the plaintiffs in that case: the National Small Business Association and one individual. Final Judgment, *National Small Bus. United*, 2024 WL 899372 (5:22-cv-1448-LCB), ECF No. 52; Complaint ¶¶ 11-14, *National Small Bus. United*, 2024 WL 899372 (5:22-cv-1448-LCB), ECF No. 1. The United States has appealed the decision. Notice of Appeal, *National Small Bus. United*, 2024 WL 899372 (5:22-cv-1448-LCB), ECF No. 54. And FinCEN has stated that it will continue to enforce the Act against all entities other than the plaintiffs in the Alabama litigation and the plaintiff business association's members. FinCEN, *Updated: Notice Regarding* National Small Business United v. Yellen*, No. 5:22-cv-01448 (N.D. Ala.)* (Mar. 4, 2024), https://www.fincen.gov/news/news-releases/updated-notice-regarding-national-small-business-united-v-yellen-no-522-cv-01448.

subsidiaries of exempt entities are also exempt. *Id.* § 5336(a)(11)(B)(xxii); 31 C.F.R. § 1010.380(c)(2)(xxii).

If an entity is a "reporting company" under the Act, the second compliance step is to identify the company's beneficial owners. Only individuals can be beneficial owners. *See* 31 U.S.C. § 5336(a)(3)(A). An individual can be a beneficial owner of a reporting company in one (or both) of two ways. First, an individual who "exercises substantial control" over a reporting company is a beneficial owner of the company. *Id.* Second, an individual who owns or controls at least 25% of the ownership interests in a reporting company is also a beneficial owner. *Id.*[7]

FinCEN's implementing regulations further flesh out the definition of "beneficial owner." As to the first type of beneficial ownership—"substantial control"—an individual has substantial control over a company if they are a senior officer, if they have authority to appoint or remove a senior officer or majority of the board, if they "direct[], determine[], or [have] substantial influence over" important decisions of the company, or if they have "any other form of substantial control over the reporting company." 31 C.F.R. § 1010.380(d)(1)(i). This control may be direct or indirect (*e.g.*, control exercised through another entity counts). *Id.* § 1010.380(d)(1)(ii).

Turning to the second type of beneficial ownership—25% ownership—an individual is a beneficial owner if they own 25% or more of a reporting company regardless of the precise nature of their ownership interest; stock, other forms of equity, membership interests in LLCs, and more, all may qualify. *Id.* § 1010.380(d)(2)(i). As with the "substantial control" definition, there is a catch-all for "[a]ny other instrument, contract, arrangement, understanding, relationship, or mechanism used to establish ownership." *Id.* § 1010.380(d)(2)(i)(E). The regulations also provide a mechanism to identify 25% owners for an entity with more than one type of ownership interest. *Id.* § 1010.380(d)(2)(iii).

---

[7] Certain individuals who would otherwise qualify as beneficial owners are excluded from the definition: minors; individuals who hold an interest as nominee or custodian on behalf of another; individuals who are employees of a reporting company and have control of, or receive economic benefits from, the entity only in that capacity; individuals whose interest in the company arises only from the expectation of inheritance; and creditors who do not otherwise meet the definition of a beneficial owner. 31 U.S.C. § 5336(a)(3)(B).

Once a reporting company has identified its beneficial owners, it must file the BOIR with FinCEN. The BOIR must include certain identifying information for each beneficial owner of a reporting company, including name, date of birth, address, and a copy of an identification document. 31 U.S.C. § 5336(b)(2); 31 C.F.R. § 1010.380(b)(1)(ii).[8] There is no requirement to report the reason why an individual qualifies as a beneficial owner (substantial control, 25% ownership, or both). FinCEN, *Small Entity Compliance Guide: Beneficial Ownership Information Reporting Requirements* 16 (Version 1.1, Dec. 2023) ("Compliance Guide").

The deadline to file depends on when the entity was created. Generally speaking, reporting companies created or registered after January 1, 2024, must report within 90 days after creation or U.S. registration; entities created or registered after January 1, 2025, must report within 30 days after creation or registration; and entities created or registered before 2024 must report by January 1, 2025. 31 C.F.R. § 1010.380(a)(1). Although there is no annual or periodic reporting requirement, a company must report any changes to its previously reported BOIR within 30 days of the change. *Id.* § 1010.380(a)(2).

FinCEN must maintain this information in a secure database and release it only to authorized requesters for the purposes specified in the Act. 31 U.S.C. § 5336(c); *see also* 31 C.F.R. § 1010.955 (implementing regulation for data access provisions). With limited exceptions, access is only available to law enforcement agencies for investigatory, security, or intelligence purposes. *See* 31 U.S.C. § 5336(c)(2)(B). FinCEN estimates that some 32.6 million reporting companies will need to file BOIRs in 2024 alone. Beneficial Ownership Information Reporting Requirements, 87 Fed. Reg. 59,498, 59,549 (Sept. 30, 2022) ("BOIR Final Rule").

The Act comes with criminal and civil penalties. Any person who willfully provides, or attempts to provide, false or fraudulent beneficial ownership information to FinCEN, or willfully fails to report complete or updated beneficial ownership information, may be liable for a civil penalty of up to $500 per day the violation continues, a fine of up to $10,000, and/or imprisonment for up to

---

[8] Reporting companies formed after January 1, 2024, must identify both their beneficial owners and their "applicants," meaning the individual who actually files the documents to create the entity and the individual who directs or controls the filing. 31 U.S.C. § 5336(b)(2)(A); 31 C.F.R. § 1010.380(b)(2)(iv), (e).

two years. 31 U.S.C. § 5336(h)(1), (3). All senior officers of a reporting company are liable if the company fails to file a BOIR. *See* 31 C.F.R. § 1010.380(g)(4).

To help entities comply with the Act, FinCEN has issued guidance to accompany the BOIR form. *See generally* Compliance Guide, *supra*. In particular, FinCEN's Small Entity Compliance Guide offers step-by-step instructions to help an entity determine whether it is a "reporting company" and, if so, to identify its beneficial owners and complete the BOIR. These instructions are intended to "provid[e] comprehensive guidance and communicat[e] information about the reporting requirements in plain language." *Id.* at v. To that end, the instructions distill the various questions an entity faces under the Act into flowcharts and yes-or-no questions with illustrative examples. *See, e.g.*, *id.* at 2, 5-14, 20, 22. FinCEN also publishes answers to frequently asked questions and other informal guidance on its website. FinCEN, *Beneficial Ownership Information: Small Business Resources*, https://www.fincen.gov/boi/small-business-resources (last visited May 2, 2024).

Some CPA organizations believe that "[d]ue to the nature of the CPA-client relationship, a client's first inclination may be to turn to their CPA for advice on [the Transparency Act] rather than their attorney," but note that this creates various risks—including unauthorized practice of law risk—and recommend that CPAs explicitly exclude BOIR services from the scope of their engagements. AICPA Member Ins. Programs, *Risk Alert: Navigating Corporate Transparency Act/Beneficial Ownership Reporting* (2024), https://www.cpai.com/Education-Resources/my-firm/Tax-Services/What-accounting-firms-need-to-know-about-CTA. At least one large accounting firm has announced that it "will not advise on or assist with the preparation of BOI reporting" due to unauthorized law practice risk. Baker Tilly, *The New Beneficial Ownership Reporting* (Sept. 20, 2023), https://www.bakertilly.com/insights/the-new-beneficial-ownership-reporting.

But other accounting industry commentators see the BOIR requirement as "an opportunity for accounting professionals to expand the scope of advisory services offered." *E.g.*, Thomson Reuters Tax & Accounting, *Are You Ready? The Corporate Transparency Act Becomes Effective Jan. 1, 2024* (Oct. 19, 2023), https://tax.thomsonreuters.com/blog/are-you-ready-the-corporate-transparency-act-becomes-effective-jan-1-2024/. The possibility

that some CPAs might seek to offer BOIR preparation services prompted the Board of Public Accountancy to request this opinion.

## II
## Analysis

### A.    The Definition of "Practice of Law"

"Except as otherwise provided by law, a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar."  BO&P § 10-601(a).  An individual who is neither a lawyer, nor acting under a lawyer's supervision, and who performs activities that constitute "the practice of law," is thus engaged in the *unauthorized* practice of law.[9]  *See, e.g.*, *Lukas v. Bar Ass'n of Montgomery County, Md.*, 35 Md. App. 442, 443 (1977).

The Maryland Constitution vests the authority to define "the practice of law" in the Judiciary.  *Hahn Transp.*, 253 Md. at 583.  However, our Office has often issued official opinions on practice-of-law questions for the guidance of our clients and the public in areas where the Supreme Court has not yet spoken.  *See, e.g.*, 90 *Opinions of the Attorney General* 101 (2005); 80 *Opinions of the Attorney General* 138 (1995); 79 *Opinions of the Attorney General* 174 (1994).  Our role, then, is to "predict, as best we can," how the courts would resolve your question, using case law as "our most important guide."  107 *Opinions of the Attorney General* 153, 153-54 (2022).

Your question sought guidance on what forms of "assistance to clients in connection with BOI reporting" and "what CPA activities relating to BOI reporting would and would not constitute unauthorized practice of law."  A number of activities could fall under those headings:

> (1)  Informing clients generally that the BOIR requirement exists and must be complied with;

---

[9] Some activities that would otherwise qualify as "practice of law" might not be *unauthorized* practice of law if performed under the supervision of an attorney.  For example, a supervised law clerk may draft court filings and perform other tasks that a nonlawyer could not perform on their own.  *See, e.g.*, *Hallmon*, 343 Md. at 400.  Here, however, we have assumed that CPAs would undertake their BOIR-related activities independently, without attorney supervision.

(2) Answering general client questions about the BOIR requirement without particularizing an answer to the client's individual circumstances;

(3) Directing the client to guidance published by FinCEN;

(4) Helping a client determine whether it is a "reporting company" that must file a BOIR;

(5) Helping a client that is a "reporting company" identify its beneficial owners (and, for new entities, its "applicants");

(6) Once beneficial owners have been identified, gathering the required personal information on each beneficial owner;

(7) Filling out the BOIR and filing it with FinCEN.

The courts have "not endeavor[ed] to formulate a precise definition of the practice of law." *Lukas*, 35 Md. App. at 443. Instead, they will "consider each state of facts and determine whether it falls within the fair intendment" of the term. *E.g.*, *Attorney Grievance Comm'n v. Shaw*, 354 Md. 636, 649 (1999) (quoting *In re Mark W.*, 303 Md. 1, 8 (1985)).

But case law nonetheless offers some general guidelines. "To determine whether an individual has engaged in the practice of law, the focus of the inquiry should 'be on whether the activity in question required legal knowledge and skill in order to apply legal principles and precedent.'" *E.g.*, *Hallmon*, 343 Md. at 397 (quoting *In re Discipio*, 163 Ill.2d 515, 523 (1994)). After all, the practice of law "connot[es] much more than merely working with legally-related matters." *Attorney Grievance Comm'n v. Sperling*, 459 Md. 194, 267 (2018) (quoting *Mark W.*, 303 Md. at 19). A central question in determining whether an activity is the practice of law, then, is whether that activity requires a lawyer's skills, training, and professional judgment. *See, e.g.*, *id.*; *see also, e.g.*, *Kennedy v. Bar Ass'n of Montgomery County*, 316 Md. 646, 662 (1989) ("Utilizing legal education, training, and experience an attorney applies the special analysis of the profession to a client's problem."); *Hahn Transp.*, 253 Md. at 585; *Lukas*, 35 Md. App. at 448-49; 90 *Opinions of the Attorney General* at 104.

In other words, to determine whether an activity is the practice of law, it is necessary to assess how far that activity implicates the

fundamental, basic knowledge and skills of a lawyer, which are taught in law school, tested on the bar exam, and honed through experience in practice.[10] These fundamentals have been defined, to some extent, by the Supreme Court of Maryland in the Rules of Professional Conduct. They include the knowledge of substantive legal principles appropriate to a matter, *see* Md. Rule 19-301.1 cmt. 1; the skills of legal research, analyzing precedent, evaluating evidence, legal drafting, and "determining what kind of legal problems a situation may involve" ("issue spotting"), *see id.* cmt. 2; and the judgment to determine the best legal means of pursuing a client's objectives, including making tactical decisions on the client's behalf where appropriate, *see* Md. Rule 19-301.2 cmt. 1. The more these skills and legal knowledge are required, the more likely an activity is the "practice of law."

The courts and our opinions have also identified activities that usually do require, or traditionally have been understood to require, a lawyer's training and skills. The bulk of Maryland precedent on unauthorized practice involves advocacy for others before courts and government agencies or activities ancillary to such advocacy, including advice on advocacy proceedings, preparation of pleadings and documents related to those proceedings, and negotiations with adverse parties. Although the courts have avoided stating categorical rules, such activities will typically constitute the practice of law. *See, e.g.*, *Attorney Grievance Comm'n v. Smith*, 443 Md. 351, 368-69 (2015); 80 *Opinions of the Attorney General* at 143; 65 *Opinions of the Attorney General* 28, 30-31 (1980); *see also* BO&P § 10-101(h)(1)(ii), (h)(2)(iii).

Another area that has been held to require legal training and skill is the preparation of customized legal instruments that create or alter legal rights, such as wills, deeds, or contracts. *See, e.g.*, *Lukas*, 35 Md. App. at 444, 448-49 (involving a contract); *Attorney Grievance Comm'n v. Brooke*, 374 Md. 155, 176-77 (2003) (involving a will); 90 *Opinions of the Attorney General* at 105 (involving real estate documents); *see also* BO&P § 10-101(h)(2)(ii). These activities, too, are likely to be considered law practice, although as always the courts will consider each case on its own facts.

---

[10] Maryland law defines the scope of some other professions in a similar way. For example, the Maryland Architects Act provides that an activity does not constitute the practice of architecture unless it "requires education, training, and experience in architecture." BO&P § 3-101(*l*)(1).

The Supreme Court of Maryland has also said, generally, that "advising clients by applying legal principles to the client's problem is practicing law." *Kennedy*, 316 Md. at 663; *see also id.* at 666 ("[T]he very acts of interview, analysis and explanation of legal rights constitute practicing law in Maryland."). Similarly, the Appellate Court has stated that "[w]here trial work is not involved but the preparation of legal documents, their interpretation, the giving of legal advice, or the application of legal principles to problems of any complexity, is involved, these activities are still the practice of law." *Lukas*, 35 Md. App. at 448 (quoting F. Trowbridge vom Baur, *Administrative Agencies and Unauthorized Practice of Law*, 48 A.B.A. J. 715, 716 (1962)). And the General Assembly's definition of practice of law includes "giving legal advice." BO&P § 10-101(h)(1)(i). Thus, one might argue that *any* application of law to fact, for a client, is "legal advice," and thus is the practice of law. *See, e.g.*, *Disciplinary Counsel v. Deters*, 165 Ohio St.3d 537, 541 (2021).

However, these statements by the Maryland courts should be understood in context. They were made in cases that either involved one of the traditional law-practice activities identified above, *see Lukas*, 35 Md. App. at 445-46 (involving representation before administrative agencies and customized contract drafting), or involved individuals who actually held themselves out as Maryland attorneys, *see Kennedy*, 316 Md. at 665-66; *see also Somuah v. Flachs*, 352 Md. 241, 262 (1998) (distinguishing *Kennedy* on that basis). Of course, the practice of law is not limited to these situations, and advising clients by applying law to fact will often qualify as law practice. But because the courts will consider each practice-of-law case on its own facts, we do not understand the courts' general statements to mean that application of law to fact will *always* be "legal advice" within the meaning of the unauthorized practice prohibition. We think that the ultimate question remains whether the particular activity at issue requires a lawyer's knowledge and skills, and thus comes within the "fair intendment" of the term "practice of law." *E.g.*, *Shaw*, 354 Md. at 649.

Under that test, an activity is not "the practice of law" just because it requires some knowledge of a particular area of law. For example, an activity is not the practice of law when it requires no more than the "elementary knowledge of the law" that "the ordinary or average [layperson] may be deemed to possess." *See Lukas*, 35 Md. App at 448 (quoting R.E. Heinselman, Annotation, *What Amounts to Practice of Law*, 111 A.L.R. 19, 24-25 (1937)); 80 *Opinions of the Attorney General* at 141.

Even activities that may require more than an ordinary layperson's substantive knowledge of the law, as well as application of that knowledge to facts, may not qualify as practice of law if they do not call for a lawyer's training, skills, and judgment. For example, although calculating the capital gains and losses of a stock portfolio for tax purposes involves the application of tax law principles to particular facts, it is not necessarily the practice of law. *See Shaw*, 354 Md. at 641, 652. This could be because, as Massachusetts' highest court put it, an activity that is "commonly performed by competent nonlawyer professionals" might not be law practice. *Real Estate Bar Ass'n for Mass. v. National Real Estate Info. Servs.*, 459 Mass. 512, 521 (2011); *cf. Mark W.*, 303 Md. at 19 (holding that, for purposes of admission-without-examination rule, work as a hearing examiner for a State agency "in a very limited field of law" was not practice of law). An established practice of nonlawyer involvement in an activity may be evidence that a lawyer's training and skills are not needed for that activity.[11]

Our Office has also opined that many activities of an estate's personal representative do not rise to the level of "practice of law," such that a nonlawyer may perform them and—especially relevant here—the staff of the office of a Register of Wills may assist with them. *See* 61 *Opinions of the Attorney General* 738, 738-39, 740 n.1 (1976); 56 *Opinions of the Attorney General* 250, 251 (1971); Md. Op. Att'y Gen. No. 76-102, at 2-3 (June 30, 1976) (unpublished). Even though the administration of an estate involves the application of procedural and substantive law to a particular matter, much of the process is sufficiently

---

[11] We understand that CPAs regularly prepare tax returns and give tax advice to their clients, which involves the interpretation and application of complex legal rules. *See, e.g.*, McManus, *supra*, at 541-42. This practice, by itself, does not establish that CPAs may also assist in BOIR preparation without restrictions. You did not ask, and so we do not opine here, about how the unauthorized practice of law prohibition interacts with CPAs' tax practice. But at least some aspects of CPA tax practice are expressly authorized both by Maryland law, *see* BO&P § 21-102(b)(1), and (at least as to federal taxes) by IRS regulations, *see* 31 C.F.R. §§ 10.2(a)(4), 10.3(b). Also, CPAs' tax practice activities have a decades-long history, *see, e.g.*, Griswold, *supra*, at 1115-16, and are more closely related to CPAs' traditional core function of verifying and communicating financial data, *see supra* Part I.B; *cf.* 52 *Opinions of the Attorney General* 244, 246 (1967) (opining that custom and practice may be relevant to the definition of "practice of law"). None of these arguments carry over to BOIR preparation. Thus, we do not think CPAs' tradition of tax practice is directly relevant, one way or the other, to the "practice of law" analysis for BOIR preparation.

"administrative" that "any advice given by the Register with respect to those functions would not constitute the unauthorized practice of law." Md. Op. Att'y Gen. No. 76-102, at 2. This is further indication that not every activity requiring some knowledge of law or involving application of law to particular circumstances is the *practice* of law.

We also think the courts would recognize the practical problems with an inflexible rule that any application of law to fact for another is law practice. Members of many recognized professions apply law to fact in the course of their work. For example, architects must assess (for themselves and their clients) whether the plans for a building comply with applicable building codes. *See* Annette Davis Perrochet, *Architects and Engineers* § 3:3 (June 2023 update). Electricians do the same with electrical codes. *See* BO&P § 6-101(j) (defining a "master electrician" as someone who has the ability to provide electrical services "in a manner that complies with applicable . . . codes[] or law"). Professional land surveyors prepare plats and similar documents affecting property rights. *See* BO&P 15-101(k). Licensed athlete agents negotiate contracts on their clients' behalf, and presumably also explain contract terms to their clients. *See* Md. Code Ann., Bus. Reg. § 4-401(b), (c). And registered tax preparers give tax advice and prepare tax returns. *See* BO&P § 21-101(f). Holding that the application of legal principles to a client's situation is *always* practicing law would impair or destroy these licensed professionals' ability to function. *See Real Estate Bar*, 459 Mass. at 518 (noting this issue); *cf. Kennedy*, 316 Md. at 662 (rejecting a definition of law practice that "would be impossible to apply and enforce in the real world").

Finally, in deciding whether a given activity violates the prohibition on unauthorized practice, the court may also consider the purpose of the unauthorized practice prohibition, which is to protect the public and the legal system from unqualified and/or unethical practitioners. *See R.G.S.*, 312 Md. at 638. In some situations, there will be "little consumer benefit" to requiring an attorney to perform a particular task, and "little threat that the absence of an attorney will result in the consumer harm that the prohibition against unauthorized practice is designed to prevent." 90 *Opinions of the Attorney General* at 106.

With those principles in mind, we will consider whether any of the categories of BOIR-related activity listed above qualifies as the practice of law.[12]

## B.    BOIR Assistance and the Practice of Law

### 1.    Providing General Information About the BOIR Requirement

We first consider whether it would be practice of law to inform clients generally that the BOIR requirement exists and must be complied with; to answer general questions about the BOIR requirement, without particularizing an answer to the client's individual circumstances; and/or to direct the client to FinCEN's published guidance.

In our opinion, none of these activities would constitute the practice of law.  Our Office has consistently opined that providing general information about the law, without expressing a view about the client's particular circumstances, is not law practice.  For example, in 79 *Opinions of the Attorney General* 174, we concluded that a nonlawyer social worker could inform a birth parent of the existence of certain statutory rights, including the right to revoke consent to an adoption, *id.* at 175-77.  Similarly, we have opined that it is not unauthorized practice of law for a "lay advocate" to give domestic violence survivors "unadorned . . . information about what rights and remedies exist."  80 *Opinions of the Attorney General* at 142; *see also, e.g.*, Letter from Robert N. McDonald, Chief Counsel for Opinions & Advice, to Robert J. Rhudy, Esq., Maryland Legal Servs. Corp., at 9 (Oct. 3, 2001) ("Rhudy Letter") ("[A] legal services hotline that simply dispenses general information about an area of the law, as opposed to

---

[12] If FinCEN were to promulgate a regulation expressly authorizing CPAs to perform certain activities related to BOIR preparation, our analysis could change.  Such a federal regulation might preempt the State's unauthorized practice of law rule as applied to BOIR preparation. *See Sperry v. Florida ex rel. Florida Bar*, 373 U.S. 379, 385 (1963) (holding that regulations authorizing nonlawyers to practice before the U.S. Patent Office preempted state unauthorized practice of law rules).  But while FinCEN has recognized that some reporting companies may turn to CPAs for BOIR preparation, *see, e.g.*, BOIR Final Rule at 59,571, so far we see no evidence of an intent to preempt State unauthorized practice of law rules, *see Wells v. Chevy Chase Bank, F.S.B.*, 377 Md. 197, 211 (2003) (noting that analysis of preemptive effect of federal regulation turns on federal agency's intent).

particularized legal advice, would not be involved in the practice of law.").

This view rests on "common practice and common sense," because "[c]ommerce and government would grind to a halt if every piece of information about a statutory right or obligation could be communicated only by a lawyer." 79 *Opinions of the Attorney General* at 176. But our view that providing general information about the law is not law practice also aligns with the principle that an activity is not the practice of law if it does not require a lawyer's skill and judgment. Merely pointing out the existence of certain legal rights and remedies requires some knowledge of the law but does not necessarily require a lawyer's specialized abilities.

It thus would not be the practice of law for a CPA to offer clients general information about the BOIR requirement or to answer general questions about it. *See* Rhudy Letter at 9. Along similar lines, we think a CPA could direct a client to BOIR guidance promulgated by FinCEN, such as the FinCEN Compliance Guide and FAQs on the FinCEN website, without straying beyond the boundary of giving "general information" about the law. CPAs can thus provide this kind of basic information about the BOIR requirement to their clients.

### 2. *"Mechanically" Filling Out and Filing the BOIR Form*

If a client were to determine for itself that it is a reporting company and provide its CPA with a list of beneficial owners, it would not be "practice of law" for the CPA to gather the necessary information about each beneficial owner (address, birthdate, etc.), enter it on the BOIR form, and file the form with FinCEN. The "mere mechanical filling out of forms" does not require a lawyer's skills and so is not the practice of law. *Lukas*, 35 Md. App at 448. Following *Lukas*, we have concluded that it would not be practice of law for a loan officer to insert factual information, such as the name of the borrower and address of the property, in a standardized mortgage form. 90 *Opinions of the Attorney General* at 105. Similarly, the BOIR form is a standardized, government-provided form, and merely entering factual information on the form and filing it with FinCEN would not be law practice.

> 3.  *Determining Whether the Client Is a "Reporting Company" or Identifying a Client's Beneficial Owners*

A client might ask their CPA for help in determining whether it is a "reporting company" that is required to file a BOIR, or with identifying its "beneficial owners" as defined in the Act.  These determinations are closer to the line of "practice of law" than the other activities we have discussed so far.  They require applying the law—the Transparency Act and implementing regulations—to a particular client's circumstances.  But this is only the beginning of the analysis.  *See supra* Part II.A.  The ultimate question is whether helping a client determine its "reporting company" status or identify beneficial owners comes within the "fair intendment" of the term "practice of law," and whether it calls for a lawyer's professional training, skills, and judgment.  *See, e.g.*, *Hallmon*, 343 Md. at 397.

An important consideration in this analysis is that FinCEN has published detailed instructions for BOIR reporting.  *See generally* Compliance Guide, *supra*.  The instructions provide a series of yes-or-no questions (some in flowchart form) and arithmetic questions.  Answering the questions posed by these instructions will, in theory, provide all the information one needs to comply with the BOIR requirement, including the determination of whether an entity is a "reporting company" and who its beneficial owners are.  Compliance Guide at 2-31.[13]  Once an entity has gone through the instructions, assuming it is a reporting company, only the ministerial task of listing beneficial owners on the BOIR form and filing it will remain.

FinCEN designed the BOIR instructions for lay users.  *See id.* at v.  In fact, FinCEN expects that "many, if not most" entities, aided by the instructions, should be able to comply with the BOIR requirement without professional assistance from either an attorney or a CPA.  FinCEN, *Beneficial Ownership Information: Frequently Asked Questions* § B.7 (Apr. 18, 2024), https://www.fincen.gov/boi-faqs.

---

[13] Two other aspects of BOIR compliance covered by the instructions are the determination whether a person who would otherwise qualify as a "beneficial owner" is exempt from that status, Compliance Guide at 29-31; *see supra* note 7, and the identification of "applicants"—the individuals responsible for filing the paperwork to create a new entity, Compliance Guide at 32-36; *see supra* note 8.  Although we do not separately discuss these issues, the framework we set forth below applies to them as well.

The existence and accessibility of these government-provided instructions is a relevant consideration in the practice-of-law analysis. "Filling out standard government forms for others is not necessarily the practice of law." *Real Estate Bar*, 459 Mass. at 525. This is because such forms are often designed to be filled out by laypersons, without the need for any independent legal knowledge. *See Lowell Bar Ass'n v. Loeb*, 315 Mass. 176, 185 (1943) (noting that in many cases, an income tax form "can readily be filled out by any intelligent taxpayer . . . who has the patience to study the instructions"); *Countrywide Home Loans, Inc. v. Kentucky Bar Ass'n*, 113 S.W.3d 105, 122 (Ky. 2003) (recognizing that, at real estate closings, a lawyer is not needed for questions that can be answered "by reading the face of the document or by offering a blackletter description").

Completion of a government form in compliance with instructions designed for laypersons thus does not necessarily require a lawyer's skills. This is especially true for a reporting or disclosure form. With this kind of form, neither discretionary judgment as to means or ends nor unguided issue-spotting is involved; the only objective is correct compliance with one specific mandate. *See Hargis v. JLB Corp.*, 357 S.W.3d 574, 585 (Mo. 2011) (holding that preparation of loan applications and financial disclosures was not practice of law because "[t]he forms state what information is required to be filled in or provided" and "accuracy, rather than discretion—legal or otherwise—is what is required"). And if the form's instructions are designed to be understood by laypersons, then neither independent knowledge of substantive law nor legal interpretation skills are required to correctly complete the form.

Consistent with that view, we have recognized that walking a layperson through the instructions for a legal form is not necessarily the practice of law. For example, our 1995 opinion concluded that a lay advocate could help a domestic violence survivor "fill out a form pleading herself by defining terms in the instructions . . . or by pointing out where on the form particular information is to be set out." 80 *Opinions of the Attorney General* at 143. We have also concluded that filling in factual information in a standardized mortgage form is not the practice of law. 90 *Opinions of the Attorney General* at 106-07.

In other contexts, however, assisting with a form might well be the practice of law. For example, where a form will be filed in an adversarial proceeding, creates or alters legal rights (like a contract or deed), or requires discretionary choices among

alternatives (such that advice is needed on the possible legal effects of each choice), assistance with the form that goes beyond merely transcribing factual information is more likely to be considered the practice of law. *See, e.g.*, 80 *Opinions of the Attorney General* at 144; *In re Peterson*, No. 19-24045, 2022 WL 1800949, at *46-48 (Bankr. D. Md. June 1, 2022) (holding that a nonprofit engaged in unauthorized practice of law by offering software to guide bankruptcy petitioners' choice of exemptions for property). Similarly, helping a client identify which forms are needed to achieve their objectives in the first place may, in some cases, qualify as law practice. *See Attorney Grievance Comm'n v. Brisbon*, 422 Md. 625, 638-39 (2011) (involving selection of immigration forms). But none of those circumstances exist here.

When considering unauthorized practice questions, it is also important to keep in mind the purpose of the unauthorized practice prohibition, which seeks to prevent incompetent and/or unethical "representation" by nonlawyers. *See, e.g.*, *R.G.S.*, 312 Md. at 638; 90 *Opinions of the Attorney General* at 106. In the context of advocacy before tribunals or preparation of legal instruments, for example, an error by an incompetent practitioner can cause irreparable harm, such as a missed statute of limitations, a judgment against the client that a competent lawyer could have avoided, a client bound to unfavorable contract terms, or a will that doesn't effectuate the client's wishes. *See, e.g.*, Md. Rule 19-301.3 cmt. 3. But with a government form that merely implements a statutory disclosure requirement, the probability of a mistake irreparably harming the client's interests, through the permanent loss of a valuable legal right or the taking on of an unwanted legal duty, is smaller.

A BOIR does come with legal consequences for misstatements or material omissions—potentially severe consequences—but the same is true for almost every document filed with the government. Moreover, an error on a BOIR will cause no legal harm unless the error is willful. *See* 31 U.S.C. § 5336(h)(1). And an error or omission stemming solely from a good-faith misinterpretation of the instructions is unlikely to meet that threshold. Under the Transparency Act, a "willful" violation must be both voluntary and intentional. 31 U.S.C. § 5336(h)(6); *see also Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 584-85 (2010) (noting that, in general, a statutory violation based on a mistake of law is not considered "willful"). So assuming the CPA acts in good faith, the risk that any errors they make in BOIR preparation will harm the client is relatively low, at least compared to errors in traditional law-practice activities.

Furthermore, CPAs, like lawyers, are subject to high ethical standards. The CPA code of professional conduct, adopted by the Board of Public Accountancy, covers subjects such as independence, truthfulness, competence, and confidentiality. COMAR 09.24.01.06; *cf. Sperry v. Florida ex rel. Florida Bar*, 373 U.S. 379, 402 (1963) (noting that state's interest in protecting the public from unqualified practitioners was lessened in the case of patent agents who must meet Patent Office standards). A CPA violating this code of conduct may face reprimand, monetary penalties, license suspension, or license revocation. BO&P § 2-315.

Where, as here, the risk of errors causing irreparable harm to the client is small, and the service is provided by a practitioner subject to ethical constraints, there is "little threat that the absence of an attorney will result in the consumer harm that the prohibition against unauthorized practice is designed to prevent." 90 *Opinions of the Attorney General* at 106. These considerations standing alone would not necessarily be enough to take an activity outside the bounds of law practice. A low-risk activity may nonetheless qualify as practice of law. But the low risk of client harm is a relevant factor in determining whether a trained and qualified lawyer's skills are necessary for a given task.

With these principles as our starting point, we will make our best effort to offer guidance about which activities in BOIR assistance (beyond providing general information and mechanical form-filling) would be unauthorized practice of law. However, because the array of questions and fact situations that might potentially exist in the BOIR context is so large, and because of the courts' case-by-case approach in this area, we are unable to provide a bright-line set of rules that will address every potential circumstance in advance. Identifying unauthorized practice of law in this context is less a question of kind and more a question of degree: the degree to which the situation calls for a lawyer's knowledge, training, skills, and judgment. With that said, the following general principles may assist in evaluating particular situations.

### i. *Walking the Client Through the Instructions*

First, we think a CPA may walk a client through the instructions as laid out in FinCEN's Compliance Guide by directing the client's attention to each question in turn and recording the client's answers. This includes following the yes-or-no branches on one of the instructions' flowcharts, *e.g.,*

Compliance Guide at 2, and performing simple calculations to determine ownership shares, *id.* at 23, as appropriate. If the client is able to answer all of these questions, then determination of "reporting company" status and identification of beneficial owners based on their answers will be a merely "mechanical" function. *See Lukas*, 35 Md. App at 448. Given that the instructions are designed for laypeople, merely walking a client through the instructions in this way does not seem to require a lawyer's skills. *See* 80 *Opinions of the Attorney General* at 143.

Some of the individual questions within the instructions might call for some form of legal analysis, such as whether a particular individual has authority to appoint or remove a majority of the entity's board of directors. *See infra* Part II.B.3.iii. But we suspect that, in many cases, the client will nonetheless be able to answer a lot of these questions based on their own knowledge. For example, an existing entity is likely to already know whether it is a federally regulated bank, and an entity's management is likely to know who, if anyone, controls the seats on its board of directors. A CPA who merely asks the client these questions and notes the answers would clearly not be practicing law. However, to ensure that the client does not explicitly or implicitly rely on the CPA for legal advice during this process, we recommend that the CPA warn the client that the CPA cannot provide legal advice and that the client should consult an attorney if uncertain about any legal question. *See* 90 *Opinions of the Attorney General* at 102 (favorably noting loan officers' similar practice when completing mortgage forms).

### ii. *Defining Terms*

Nor do we think a CPA is necessarily limited to reciting the instructions' questions and recording the client's answers. For example, based on the logic of our 1995 opinion involving domestic violence survivors' advocates, we think it would not be the practice of law for a CPA to define at least some terms in order to clarify the questions for a client. *See* 80 *Opinions of the Attorney General* at 143. At a minimum, this would include terms like "corporation" or "stock" that would be familiar to a layperson with only "the most elementary knowledge of law." *Id.* at 141 (quoting *Lukas*, 35 Md. App. at 448). And although the question is closer, we think a CPA could also define terms, like "equity" or "trust," that would be familiar to CPAs through their own training and expertise, even if not to the general public, Compliance Guide at 21-22. Terms that are within the expertise of a reasonably competent CPA do not necessarily require *legal* knowledge or training to define. Moreover, there is no consumer-protection

reason to prohibit a CPA from defining terms that are commonly known by CPAs. *See* 90 *Opinions of the Attorney General* at 106.

> iii. *Answering Questions from the Form for the Client*

More difficult issues could arise if a client were to ask their CPA to go beyond walking them through the instructions and defining terms. For example, a client might seek advice from their CPA on how to answer a question from the instructions when the client is uncertain how the instructions apply to the client's situation; might ask a CPA to answer one or more of those questions for the client; or might want to delegate the BOIR preparation process in its entirety to the CPA.

As always, whether a CPA can help the client answer a question in the instructions, or actually answer some or all of those questions on the client's behalf, depends on whether answering the question(s) would require legal knowledge and skill. "Legal knowledge and skill" includes awareness of substantive rules of law; legal research skills; facility with general legal principles, like the rules of statutory interpretation or the principles of analyzing, weighing, and analogizing from precedent; and the ability to "issue spot," that is, to identify legal problems or legal options in a given fact situation. *See supra* Part II.A; Md. Rule 19-301.1; *Hallmon*, 343 Md. at 397 (explaining that the practice of law involves application of "legal principles and precedent"). There are no bright lines here, but a spectrum: The more this knowledge and these skills are involved in answering a question, the more likely it is that answering the question would be practicing law.

Under this "legal knowledge and skill" test, a CPA who goes beyond walking clients through the instructions, and instead answers one or more of the questions themselves, will not automatically be practicing law. *See* 90 *Opinions of the Attorney General* at 102, 106 (concluding that a bank employee filling out a standardized mortgage form with factual information, such as the address of a property, involves little or no legal knowledge or skill). For instance, we doubt any court would hold that it takes legal knowledge or skill to identify the CEO of a company. *See* Compliance Guide at 20.

Nor does the "legal knowledge and skill" test necessarily preclude factual research and analysis. A CPA likely may still answer questions that require gathering facts from the client's records or the CPA's preexisting knowledge. To take one likely

scenario, it would at least ordinarily not seem to require substantive knowledge of law, or any of the legal skills identified above, to compile a list of holders of one of the types of ownership interest identified in the instructions, such as common stock. *See id.* at 22-23. And while it may require legal knowledge and skill to determine in the first instance whether an entity is *required* to register under a particular statutory regime, *see, e.g.*, *id.* at 5, it might not require such knowledge to determine whether an entity is in fact already registered under a particular regime—for example, whether it has registered a security with the SEC.

In other cases, however, answering the client's questions might well require legal knowledge and skill and would be tantamount to giving legal advice about how to apply the law to the client's particular facts. In that event, answering the client's questions would constitute the practice of law. Although (as discussed above) the application of law to specific facts is not *always* the practice of law, *see supra* Part II.A., it can certainly rise to the level of "legal advice," *Kennedy*, 316 Md. at 663, 666, that needs to be performed by a lawyer when, under the circumstances, a lawyer's knowledge and skills are required, *see, e.g.*, *Shaw*, 354 Md. at 649.

For example, questions such as whether an individual controls a majority of board seats, Compliance Guide at 20, or whether a type of interest in the company that is not mentioned in the instructions qualifies as an ownership interest, *see id.* at 22, might in some cases require legal skills to answer, depending on the extent to which analysis and interpretation of legal documents is required. As another example, the question of whether an entity is exempt from reporting on the ground that it "exercises governmental authority," *id.* at 5, seems to be, at least in Maryland, a primarily legal question involving analysis of the entity's legal powers and functions in light of State law precedent on similar questions, *see*, *e.g.*, *Napata v. University of Md. Med. Sys. Corp.*, 417 Md. 724, 729, 737 (2011). Again, we do not suggest that the client cannot answer these questions themselves. We suggest only that it would be difficult for a CPA to answer such a question *for* a client, or to guide a client in answering, without practicing law.

A client also might ask a CPA to answer general questions that go beyond individual items on the form or in the instructions. For example, a client might ask whether there are any beneficial owners who have not yet been identified. This kind of question might be challenging for a CPA to answer without engaging in the unauthorized practice of law. It would presumably require the CPA

to consider in the abstract whether some possible but as-yet-unidentified individual(s) might be covered either by one of the specific "beneficial owner" categories or by the "catch-all" questions in the instructions—whether there are "any other individuals who have substantial control over your company," Compliance Guide at 20, or "any other instrument, contract, arrangement, understanding, relationship, or mechanism to establish ownership," *id.* at 22. This is the sort of unguided issue spotting in a legal context that lawyers normally perform.[14]

Finally, we doubt that a client will be able to delegate the BOIR preparation process to the CPA in its entirety, that is, to ask that the CPA complete every aspect of the BOIR without client assistance based entirely on the CPA's pre-existing knowledge and factual records requested from the client. There are at least some questions in the BOIR instructions, including the catch-all questions, that would be difficult for a CPA to answer without the application of legal knowledge and skill. As we have explained, the CPA can walk the client through such questions and the client can answer them, but the CPA who answers them alone risks practicing law.

Again, we cannot answer every potential question in advance. A CPA who wishes to provide BOIR assistance will need to use their best judgment, in light of the principles and examples above, to decide whether answering a particular question in the BOIR context requires consultation with a lawyer.[15]

---

[14] The presence of these "catch-all" questions does not prevent the CPA from walking the client through the instructions, or from defining specific words in the catch-all questions for the client, as we have discussed. However, we doubt that a CPA will be able to answer these questions *for* the client. Instead, the client will need to answer them based on their own knowledge of the company and individuals connected with the company.

[15] The Act requires an entity to file an updated BOIR whenever the company's previously reported information changes. *See* 31 U.S.C. § 5336(b)(1)(D); 31 C.F.R. § 1010.380(a)(2). MACPA asked about the possibility that a CPA might be asked to assist "in developing internal procedures to monitor ongoing compliance, making sure that any changes in beneficial ownership are promptly reflected in the reports." MACPA Comments at 2. Without knowing what such a compliance program would look like, it is difficult to opine in the abstract on whether designing such a program would involve practicing law. However, as we have just noted, it would be difficult for a CPA to provide comprehensive assurance that an entity's BOIR is complete and requires no updates without engaging in the practice of law.

### III
### Conclusion

In our opinion, the Maryland courts would most likely hold that a CPA may, without violating the prohibition on unauthorized practice of law, provide clients general information about the Transparency Act and the BOIR requirement without tailoring the information to any client's individual situation, or fill out and file a BOIR form using a list of beneficial owners submitted by the client.  Though the question is closer, a CPA likely also may help a client to determine whether it is a "reporting company," or to identify its "beneficial owners" within the meaning of the Transparency Act, by walking the client through FinCEN's instructions, by defining terms that are familiar to nonlawyers and/or CPAs, or by answering questions for the client where the question and answer do not call for legal knowledge or skills. However, a CPA generally should not answer a BOIR-related question for a client where there is uncertainty as to the answer and resolving that uncertainty would require legal knowledge, skill, and judgment.

Anthony G. Brown
Attorney General of Maryland

Thomas S. Chapman
Deputy Chief, Opinions and
  Advice

Patrick B. Hughes
Chief Counsel, Opinions and Advice